Per Curiam:
This case comes before the court on plaintiffs exceptions to certain findings and to the conclusion of law and opinion filed on August 2, 1976, by Trial Judge Thomas J. Lydon. He held for defendant on the basis that plaintiff had failed to carry his burden of proving that a vital Officer Effectiveness Report (OER) was not in his selection folder when a Selection Board considered plaintiff on October 7, 1974, for promotion from captain to major, but passed him over. He held that the record as a whole justified an inference that the OER was in the selection folder.
By order of February 13, 1976, the court denied defendant’s motion for summary judgment and remanded the case to the trial judge in an effort to establish the fact about the OER in issue. 209 Ct. Cl. 704 (1976). The court agrees with the conclusion of the trier of the facts in the case, although it also agrees with him that this is a difficult and close case and the result is painful. Plaintiff has been ably represented by an attorney recognized as an expert on military law. But, the ascertainable facts just do not support the claim, and it is plaintiffs burden to prove that they do. Plaintiff has told the court, and defendant admits, that the OER was not in plaintiffs selection folder when “plaintiff examined it on January 21, 1975. But, it is mere conjecture to conclude from this that it was missing on October 7, 1974, when the Selection Board met. A date stamp on the selection folder shows the OER was filed therein on January 14, 1974, and the trial judge presumes that it remained there until examined by the Selection Board in October 1974. The Air Force Board for the Correction of Military Records had earlier declined to grant plaintiff relief based on his claim of error or injustice.
Plaintiff was rated as an "absolutely superior” reserve officer. The missing OER recommended that he be immediately promoted ahead of his contemporaries. The Selection Board had between 5,000 and 6,000 selection folders to examine. It is not unusual for qualified officers to be passed over just because there are not enough promotion *118 slots to be filled by promotion of eligibles. This was the second time plaintiff was passed over when he had outstanding OERs, and he was therefore released from active duty in 1975. There is no dispute over the fact that when plaintiff was considered on October 7, 1974, a more recent OER, equally flattering as the missing one for an earlier 6-month period, was in his selection folder. The trial judge holds that the OER must be presumed to have been present, absent clear proof to the contrary, that defendant is entitled to a presumption of regularity in this matter, and that plaintiff has not overcome this presumption. We adopt his opinion and findings as the basis of our judgment for defendant.*
OPINION OE THE TRIAL JUDGE**
Lydon, Trial Judge:
Plaintiff, a former captain in the United States Air Force Reserves, was released from active duty on June 30, 1975, on the basis of his having failed to be selected for promotion to temporary major by two Selection Boards.[1] The first Selection Board convened on September 17, 1973, and the second Selection Board convened on October 7, 1974. Plaintiff challenges here, as he did before the Air Force Board for the Correction of Military Records (AFBCMR), the validity of his second passover on the ground his selection folder, placed before the October 1974 Selection Board, was incomplete when his promotion was given consideration by the board. Specifically, plaintiff complains that his Officer Effectiveness Report (OER) covering the period July 1, 1973, through January 1, 1974 (hereinafter the January OER), was missing from his selection folder when the Selection Board met. Whether this OER was in plaintiffs selection folder when the October 1974 Selection Board convened is the primary *119 issue to be decided at this time.[2] A selection folder contains pertinent records of an officer deemed necessary for promotion consideration. Such a folder would contain, inter alia, appropriate OERs, a photograph of the officer, citations and decorations.
On the basis of the findings of fact, it is concluded that plaintiff has failed to carry his burden of establishing by at least a preponderance of the evidence that the January OER was not in his selection folder when the October 1974 Selection Board met. Moreover, the evidence of record supports an inference that the January OER was in plaintiffs selection folder at all material times.
OERs are issued periodically and rate the duty performance of an officer over a specified period of time. Two OERs were rendered, relative to plaintiffs duty performahce, between the conclusion of the first Selection Board and the convening of the second Selection Board. The first OER, and the critical one in this case, covered, as indicated previously, the period July 1, 1973, through January 1, 1974. This January OER gave plaintiff the highest possible rating and recommended "prompt promotion.” It noted that plaintiffs performance was "clearly outstanding.” The second OER covered the period January 2, 1974, through August 1, 1974 (hereinafter the August OER). The August OER gave plaintiff the highest possible rating and recommended "immediate promotion.” It noted that plaintiffs performance was "absolutely superior.” Both OERs noted that plaintiff had "Outstanding Growth Potential Based On Demonstrated Performance,” and that he should be promoted "Well Ahead Of Contemporaries.” The format *120 and tone of both OERs were significantly similar. There is no dispute as to the fact that the second OER was in plaintiffs selection folder when the second Selection Board met in October 1974. It is also clear that an OER is considered to be the most important document in a selection folder. The record also suggests that generally the most recent OER carries more weight than a preceding OER when an officer’s performance is being evaluated.[3]
As a starting point, the following admonition in Weiss v. United States, 187 Ct. Cl. 1, 7, 408 F.2d 416, 419 (1969), seems appropriate:
* * * the selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer’s record. * * *.
Unlike other cases which have dealt with challenges to Selection Board proceedings,[4] the record in this case is such *121 that one cannot state with absolute certainty whether or not the January OER was in plaintiffs selection folder when the Selection Board met in October 1974.[5] As a result, the conclusions reached herein reflect a blend of facts, presumptions, and inferences, tempered by an awareness of which party must shoulder the ultimate burden of proof. Under such circumstances the final determination reached is painful regardless of which way it goes.[6]
In military pay cases, there is a strong presumption that military boards perform their duties correctly, fairly and in accordance with law and governing regulations, and the burden is on plaintiff to prove otherwise. Boyd v. United States, 207 Ct. Cl. 1, 9 (1975), cert. denied, 424 U.S. 911 (1976); Cooper v. United States, 203 Ct. Cl. 300, 304-05 (1973). Indeed, in this case, the burden was on plaintiff to show that the January OER was not in his selection folder when the Selection Board met in October 1974. Brenner v. United States, 202 Ct. Cl. 678, 690 (1973), cert. denied, 419 U.S. 831 (1974). Plaintiff has failed to carry that burden in this case. And this is so whether plaintiffs burden is viewed as requiring him to produce "cogent and clearly convincing evidence,” see Armstrong v. United States, 205 Ct. Cl. 754, 761 (1974); Stephens v. United States, 174 Ct. Cl. 365, 371-72, 358 F.2d 951, 954 (1966), or merely as requiring him to meet the less stringent preponderance of the evidence test. See Morris v. United States, 171 Ct. Cl. 220, 228 (1965).
Following notification that he had been passed over a second time and that he was to be separated from the Air *122 Force, effective June 30, 1975, plaintiff examined his selection folder and microfiche records[7] on January 21, 1975. This examination disclosed that neither the selection folder, which reposed inside a housing jacket when filed, nor the microfiche records contained his January OER. There is no dispute as to the fact that on January 21, 1975, his selection folder did not contain his January OER and his microfiche records did not contain a microfilm copy of this OER. From these established facts, plaintiff infers that the January OER must have been missing from his selection folder when the Selection Board met in October 1974. The record will not support such an inferential leap.
The record discloses that the January OER was filed in plaintiffs selection folder on January 14, 1974. This fact is supported by the January 14, 1974, date stamped at the top of the second page of this OER, which stamped date, reflecting normal, customary, and standard practice and procedure, indicates the OER was placed in the selection folder on or about that date.[8] Once in the selection folder, it is reasonable to assume it remained there until the Selection Board convened in October 1974 and was in said *123 folder until some time after the Selection Board terminated.
Generally, when personnel records such as OERs were received at the Records Maintenance Branch (RMB) at Air Force Military Personnel Center (AFMPC), Randolph Air Force Base, Texas, said records were sent first to the Microform Records Branch (MRB) at AFMPC where microfilm copies of those records were made. Thereafter, the records were returned to RMB, for filing in the selection folder, with the date this was done stamped, as indicated above, at the top of the second page of OERs. However, in the case of the January OER, it was not sent to MRB but instead went directly to plaintiffs selection folder.[9] Plaintiff seizes upon this deviation from general practice to challenge the utilization of any presumption of regularity relative to the filing in the selection folder of the January OER. While the practice of microfilming incoming records' first was generally desired practice, the record reveals that it was not rigidly followed. First, if a Selection Board was scheduled to meet within a 6-week period, all incoming records, including OERs, went directly into the selection folder and were microfilmed after the Selection Board terminated. Second, the record suggests that it was not unusual for records to be filed in the selection folder without first being microfilmed. In the trial record was a "Microform Flag” card which was used to identify records in selection folders which had not been microfilmed. This card, designed for multiuse, strongly suggests that microfilming incoming records first before placing them in selection folders was not as systematic a practice as plaintiff would have one believe. Further, the submission of incoming records to MRB for microfilming was separate and independent from placing said records in the selection folder. Microfilming merely delayed the actual date that *124 said records were placed in the selection folder. It had no other effect on the placement of a record, such as an OER, in the selection folder. Under the circumstances, failure to microfilm the January OER before filing it in plaintiffs selection folder does not detract from the presumption of regularity which the record suggests should attach to the filing on January 14, 1974, in plaintiffs selection folder of the January OER. The fact that this OER was not microfilmed in January 1974 serves to explain, as will be discussed later, why the January OER was not in the selection folder when it was examined by plaintiff on January 21, 1975.
In August 1974, plaintiffs August OER was received by RMB. It was microfilmed before being placed in plaintiffs selection folder. There was no review of the selection folder involved in these activities and so the fact that the January OER had not been microfilmed would not surface at this time. On the microfiche card, the microfilm squares of the August OER were placed in positions that would have been occupied by the January OER had it been microfilmed in January 1974. Since the January OER had not been microfilmed, it did not appear on the August 1974 microfiche card. As a result, when plaintiff examined the August 1974 microfiche card on January 21, 1975, he understandably did not see thereon the January OER.
Although not crystal clear, the record suggests that during the review process of preparing selection folders for Selection Board consideration, personnel at RMB, or perhaps board personnel, noted that the January OER had not been microfilmed and "flagged” the document for microfilming at the conclusion of Selection Board proceedings.[10]
The record does not indicate precisely when the January OER was removed from plaintiffs selection folder. The record clearly reveals that the January OER was in the microfilm-microfiche process at MRB from December 16, 1974, to February 7, 1975, at which time it was returned to *125 plaintiffs selection folder. This serves to explain why the January OER was not in plaintiffs selection folder[11] nor on his August 1974 microfiche cards when plaintiff examined the folder and the cards on January 21, 1975.
Plaintiff seeks to exploit the fact that a microform card was not in the selection folder or housing jacket, indicating that the January OER had been removed for purposes of the microfilm-microfiche process. He argues that the absence of this charge-out card supports a presumption that the January OER was never in the selection folder. Plaintiff presumes too much. It is unreasonable to assume, as one must if one is to accept plaintiffs presumptions and assumptions, that the January OER was not filed in plaintiffs selection folder on January 14, 1974, despite the date stamped thereon indicating it was so filed, that it reposed in some other selection folder, or at some other location, until December 16, 1974, when it was placed in the microfilm-microfiche process, and then placed in plaintiffs selection folder on or about February 7, 1975. There is not a scintilla of evidence in the record which would give credence to this hypothesis.
In Brenner v. United States, supra, the court stated:
We must assume in the absence of evidence to the contrary that the members of these selection boards performed their duties as officers of the government in a fair and impartial manner and in accordance with law, and that in so doing they gave the plaintiff due and proper consideration along with all of the other candidates for promotion. * * *. (202 Ct. Cl. at 692.)
*126 Before selection boards convene, selection folders of all officer candidates for promotion are reviewed by RMB personnel for completeness. Special attention is given to OERs to ensure they are chronologically complete. This emphasis on OERs in the selection folder review process gives recognition to the fact that OERs are considered to be the most important documents in the selection folder. If OERs are missing steps are taken to find the missing document or explain its absence. Before the Selection Board, the selection folders are again reviewed and board members note omissions, misfilings and other errors they discover in their review endeavors. A record is maintained by the board of noted errors and said record of errors is turned over to RMB for purposes of eliminating errors in the future. The number of errors found by the board was generally extremely low. The record in this case does not contain any record of the errors, if any, found by the October 1974 Selection Board.
Since OERs are so important, a missing OER, disruptive of the normal chronological sequence of OERs, would undoubtedly stand out in any review process. Under these circumstances, it seems reasonable to assume that if the January OER was missing from plaintiffs selection folder it probably would have been detected by RMB personnel in reviewing the selection folder, preparatory to the meeting of the Selection Board, or by board personnel in their review of the selection folder. There is no contrary evidence to rebut the presumption that the Selection Board performed its duties correctly and that if the January OER was missing from plaintiffs selection folder such an omission would have been detected and corrected and/or explained and/or noted. The absence of any such action by the Selection Board, on this record, warrants acceptance of the presumption that the Selection Board acted on a complete record, which included the January OER, when it considered plaintiff for promotion. Biddle v. United States, 186 Ct. Cl. 87, 104 (1968); see also Armstrong v. United States, supra, 205 Ct. Cl. at 762-63.
On the basis of the entire record, it is concluded that plaintiff has failed to carry his burden of proving that the January OER was not in his selection folder when the *127 Selection Board convened in October 1974. Brenner v. United States, supra, 202 Ct. Cl. at 690. It is not defendant’s burden to prove that the January OER was in the selection folder, rather it is plaintiffs burden to prove that it was not in the selection folder when the Selection Board met. See McCormick on Evidence §§306, 307 (1954). Moreover, the record as a whole supports an inference that the January OER was in his selection folder when the Selection Board reviewed it for promotion purposes. See Armstrong v. United States, supra; Biddle v. United States, supra.[12]

 The dissenting opinion of Judge Bennett follows the opinion of the trial judge which has been adopted by the court.

 The trial judge’s findings of fact, copies of which have been distributed to the parties, are not printed, as those essential to the decision appear in the opinion which follows.

 At the time of his separation on June 30, 1975, plaintiff reenlisted in the United States Air Force in the grade of sergeant, and was serving on active duty with the Air Force in said grade at the time of trial.

 This was the issue framed by the court in its order of February 13, 1976, when it denied defendant’s motion for summary judgment and remanded the matter to the trial judge for further proceedings (209 Ct. Cl. 704 (1976)). It should also be observed that the relief available to a plaintiff in cases of this type has certain limitations. A court-ordered promotion to the grade of major is beyond the pale of available relief. See Yee v. United States, 206 Ct. Cl. 388, 398, 399-400, 512 F.2d 1383, 1388-389 (1975). Further, since there is no allegation nor proof that the first Selection Board proceedings were defective in any way, no basis exists, in any event, for removal of the first passover from his military records, as requested by plaintiff. See Clinton v. United States, 191 Ct. Cl. 604, 606, 423 F.2d 1367, 1368 (1970). As to promotion nonselection, or passover, generally see J. Glosser & K. Rosenberg, Military Correction Boards: Administrative Process And Review By The United States Court of Claims, 23 Am. U. L. Rev. 391, 402-05(1973).

 Defendant suggests that even assuming arguendo that the January OER was not in the selection folder when the Selection Board met, such a deficiency, under the circumstances, constituted harmless error. See Gratehouse v. United States, 206 Ct. Cl. 288, 296, 512 F.2d 1104, 1108 (1975), and cases cited therein. See also Doggett v. United States, 207 Ct. Cl. 478, 483 (1975). Defendant argues that both the January and August OERs gave plaintiff the highest rating. Both OERs were similar in all material respects. Since the last OER is considered the most critical one in the promotion evaluation process, the fact that it was before the Selection Board and the fact that it was similar, if not slightly more favorable in tone, to the missing January OER, supports a view that its absence did not constitute prejudicial error. This argument rests on the assumption that the January OER really was immaterial, under the circumstances, and nonselection would have occurred whether the January OER was in or out of the selection folder when the Selection Board met. As a result, defendant maintains that the admonition set out in Weiss v. United States, 187 Ct. Cl. 1, 7, 408 F.2d 416, 419 (1969), quoted infra, has been met since plaintiffs records did "fairly portray the officer’s record.” While this argument has some appeal, it is not necessary to accept or reject it since the conclusion reached herein is that the January OER was before the October 1974 Selection Board.

 Most challenges to Selection Board proceedings center on the presence in the selection folder of improper derogatory materials. See Armstrong v. United States, 205 Ct. Cl. 754 (1974); Brenner v. United States, 202 Ct. Cl. 678 (1973), cert. denied, 419 U.S. 831 (1974); Weiss v. United States, 187 Ct. Cl. 1, 408 F.2d 416 (1969). In Yee v. United States, 206 Ct. Cl. 388, 512 F.2d 1383 (1975), there was no question but that the selection folder contained no OERs for a 5-year period. The fatal flaw in Yee was the absence from the selection folder of any explanation and/or justification for the lack of OERs covering the officer’s duty performance over a 5-year period. In Boyd v. United States, 207 Ct. Cl. 1 (1975), cert. denied, 424 U.S. 911 (1976), the issue centered on whether the last OER in a selection folder was so inconsistent in and of itself as to vitiate a separation action by the Assistant Secretary of the Air Force, which action rejected recommendations of the Air Force Board for the Correction of Military Records favorable to Boyd.

 In Rawlins v. United States, 197 Ct. Cl. 972 (1972), a congressional reference case, a material document found to be missing from Commander Rawlins’ personnel folder in 1949 (explanatory of certain derogatory information in said file), was held, on the basis of a reasonable inference drawn from the record as a whole, not to have been in his personnel folder during the period 1943-50 when Commander Rawlins, on a number of occasions, was considered for promotion to the grade of captain.

 It is well to bear in mind that separation from the military service because of two passovers does not reflect adversely, nor should it, on the duty performance of the separated officer. It results solely from the fact that only a relatively few promotion slots are available for filling from a selection pool of thousands of officers. It is obvious that all the officers considered, even those highly rated, cannot be promoted. Brenner v. United States, supra, 202 Ct. Cl. at 692; Boyd v. United States, supra, 207 Ct. Cl. at 12.

 A microfiche is a clear plastic card to which are affixed a series of microfilmed squares. A standard three-page OER would, when microfilmed, consist of three microfilmed squares. These OER squares would be arranged on the microfiche card in chronological sequence. A new card would be prepared if an omission of an OER from the microfilm process was later remedied.

 Plaintiff speculates that while the date stamped thereon indicates that the January OER was placed in a selection folder on said date, the OER could have been placed in someone else’s selection folder. A presumption of regularity in normal, customary and standard filing practice cannot be overcome or rebutted by speculation. Charlson Realty Co. v. United States, 181 Ct. Cl. 262, 278, 384 F.2d 434, 444 (1967). Further, plaintiff misreads Charlson Realty when he advances that decision as supporting his position. In that case, the court observed: "Actually the file stamp on the envelope or petition is nothing more than evidence of the method of procedure, habit and custom followed by the officers of the court in handling papers delivered to them in the proper discharge of their official duties. Such evidence adds nothing to the well-recognized presumption that public officers perform the duties of their office in a proper manner. But the cases hold that such a presumption will not overcome nor rebut the presumption of the arrival of a letter in due course of the mails.” 181 Ct. Cl. at 275, 384 F.2d at 443. Here, the date stamped on the OER is evidence of the custom and procedure followed in placing OERs in selection folders, creating a presumption that the January OER was placed in plaintiffs selection folder on or about the date stamped thereon. Unlike the situation in Charlson Realty, there is no stronger presumption here to override or rebut the relied-upon presumption. There is no evidence of record which would serve to require that this presumption of regularity be ignored.

 A plausible and reasonable explanation of this was given at the trial by a knowledgeable witness closely associated with records máintenance and operations at RMB at the time in question. Personnel clerks at RMB were instructed not to send on for microfilming the incoming records of any officer scheduled to be separated from active duty on or before June 30, 1974. This instruction reflected an economy move at AFMPC. A clerk ostensibly erroneously considered plaintiff to be such an officer and sent the January OER directly to his selection folder instead of first routing it to MRB for microfilming.

 Each microfilmed document was stamped with index review numbers at the top right-hand corner of each page. As a result, a reviewer could tell at a glance whether a document had been microfilmed. These index review numbers also enable one to determine the date on which the document was microfilmed.

 Generally, when a document is removed from a selection folder, a microform flag, a yellow standard paper-size card, or charge-out slip, is placed in the housing jacket in which the selection folder is filed. While the testimony of plaintiff is that the selection folder had no microform flag in it, no mention was made of the housing jacket, the substance of the testimony of plaintiff and Lt. Col. Victor A. Prosper, Chief of the Officer Promotion and Regular Appointment Branch at AFMPC, supports a finding that no microform flag or charge-out slip was in the housing jacket on January 21, 1975. Colonel Prosper was unable at the time to account for the missing OER, and it is unreasonable to assume that he would not have noticed a microform card, or charge-out slip, if one were in the housing jacket at the time. However, under the circumstances, this clerical oversight, while troubling, cannot obviate the fact that the January OER was in the microfilm-microfiche process from December 16, 1974, to February 7, 1975, and this fact serves to explain why it was not in the selection folder on January 21, 1975, when it was examined by plaintiff.

 As a result of this holding, the decisions by the AFBCMR denying plaintiffs applications for correction of his military records cannot be considered arbitrary, capricious or otherwise defective in law or fact. Accordingly, there is no need to give consideration to defendant’s suggestion that jurisdiction of this court to review AFBCMR actions, which actions are governed by 10 U.S.C. §1552 (1970), is lacking because, in defendant’s view, section 1552 does not mandate relief by way of a money judgment for the failure of the AFBCMR to correct a record, citing United States v. Testan, 424 U.S. 392 (1976). But see Armstrong v. United States, supra, 205 Ct. Cl. at 761. See also Yee v. United States, supra.