**Tim M. WOMACK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–307C.

United States Court of Federal Claims.

Feb. 7, 1996.

Anthony C. Vance, Washington, D.C., for plaintiff.

John S. Groat, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen and Assistant Director James M. Kinsella, for defendant. Maj. Edward J. Duffy, USMC, Department of the Navy, of counsel.

## ORDER

LYDON, Senior Judge:

This military pay case is before the court on defendant's motion to dismiss and the parties' cross-motions for summary judgment. Plaintiff seeks correction of his military records, the voiding of his failure to be selected for promotion, reinstatement, and back pay and allowances. For the reasons discussed below, defendant's motion to dismiss is denied, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

## FACTS

The following facts are uncontroverted. Plaintiff, Tim M. Womack, began his military career with the United States Air Force, of which he was a member from March 1, 1971 until his honorable discharge on June 2, 1976. At the time of his discharge he was serving at the rank of Sergeant. On June 3, 1976, plaintiff enlisted in the United States Marine Corps at the rank of Corporal and served in enlisted status until he was appointed to the grade of Warrant Officer in early December 1982. Plaintiff was temporarily appointed to the rank of Chief Warrant Officer–2 on December 1, 1984, and then commissioned to that rank on February 6, 1985. On May 1, 1987, plaintiff was promoted to Limited Duty Officer First Lieutenant. Plaintiff served as a First Lieutenant until December 1, 1992, when he reverted back to the rank of Chief Warrant Officer–3 as a result of having been passed over for promotion to the rank of Captain at the Fiscal Year (FY) 1991, 1992, and 1993 selection boards. The FY 91 board met in March 1990; the FY 92 board met in March 1991; and the FY 93 board met in March 1992.

Plaintiff failed to be selected to the rank of Chief Warrant Officer–4 at the FY 93 and FY 94 Warrant Officer promotion boards which convened in June 1992 and August 1993 respectively. By letter dated December 14, 1993, plaintiff was advised that because he was passed over twice for promotion to the rank of Chief Warrant Officer–4, he must retire from the U.S. Marine Corps. On May 1, 1994, plaintiff was retired involuntarily at the rank of Warrant Officer–3. Upon retirement, the Commandant of the Marine Corps advanced plaintiff to the grade of First Lieutenant on the retired list. Plaintiff claims that his passovers were the result of alleged errors in his military record.

In late August 1988, plaintiff was convicted by a North Carolina court of driving while intoxicated (DWI). He received formal counselling concerning this conviction from his commanding officer on October 26, 1988. At that time, plaintiff declined to include a statement about the conviction in his official records. Apparently, when plaintiff first signed his 1988–1989 fitness report on April 4, 1989, it did not contain any reference to the North Carolina DWI conviction. Sometime after signing this report, plaintiff was called by his reporting senior [1] and told that this report would have to be revised to reflect his DWI conviction. After meeting with his reporting senior on June 10, 1989, and ostensibly discussing the incident, plaintiff signed the revised fitness report acknowledging that he had seen the completed report and that he declined to attach a statement.

Thus, plaintiff's revised 1988–1989 fitness report contains an adverse mark in item 17c relating to his DWI conviction as required by Marine Corps regulations,[2] with an accompanying section C comment stating that the

---

1. A reporting senior is the person responsible for completing a marine's performance evaluation, known as a fitness report, and forwarding that evaluation to the reviewing officer who comments on the Marine's performance and forwards the report to Marine Corps' headquarters for insertion in the Marine's record.

2. Marine Corps Order P1610.7C, *Performance Evaluation System*, ch. 3, § 3009, ¶ 2 provides: [I]ncidents of confirmed intoxicated driving in violation of the law of the jurisdiction in which

it occurs (including Driving Under the Influence or Driving While Impaired or Intoxicated, whatever the jurisdiction's Blood Alcohol Content standard may be) are required to be reported on the fitness report for the next reporting occasion. If convicted by a civilian authority or by court-martial, or if nonjudicial punishment is imposed, item 17c (disciplinary) will be marked "yes" accompanied by an appropriate supporting section C comment.

"[a]dverse mark in 17C reflects a first time conviction for driving under the influence of alcohol. Lt. Womack successfully completed the level one treatment program required by Onslow County for first time offenders." In addition to this adverse mark, plaintiff was assigned an "AA" (above average) rating for Item 14g, "Judgment." Plaintiff in fact received a "Level Five Punishment," which consisted of limited driving privileges, payment of a fine, and community service work.[3]

Aside from his DWI conviction, plaintiff's military record as a Marine is replete with praise and recognition of his capabilities, displays of leadership, and worth to the Marine Corps. Plaintiff's fitness report dated April 22, 1980, notes that his "dedication and professionalism are seldom seen among those within his peer group.... [Plaintiff] approaches all tasks with enthusiasm, regardless of their nature or desirability ... is tactful, considerate, and provides a positive leadership example in all his associations." In April, 1980 plaintiff received a Meritorious Mast Certificate for displaying "exceptional initiative, loyalty, and cooperation" during his assignment as an Accounting Technician. Plaintiff's August 1984 fitness report notes that plaintiff "has been a superior performer in all regards.... The timeliness of his work is superior.... The contributions he has made to the Exchange system and the Command have been superior.... He is well qualified for promotion." In May 1987, plaintiff's fitness report stated that he "continues to perform his assigned duties as Officer in Charge of Branch Stores in an excellent to outstanding manner."

Even though plaintiff's 1988–1989 fitness report included the adverse mark in item 17c, indicating that he had been the subject of a disciplinary action, plaintiff's reporting senior nevertheless checked "yes" for item 19, "Qualified for Promotion." In plaintiff's

January 1990 fitness report his reporting senior commented, "This Officer can handle responsibility at the rank of Captain, and should be considered for promotion NOW" and rated item 15a, "Estimate of This Marines General Value to the Service," "OS" (outstanding). Although the reviewing officer concurred that plaintiff "is highly competent in his field" and "enthusiastically" recommended him for promotion, he stated that he would rate plaintiff excellent rather than outstanding in general value to the service.

In September 1991, plaintiff was awarded the Navy Commendation Medal [NCM] for meritorious service from May 1989 to August 1991, while assigned as a Marine Corps Exchange Officer. This citation recognized the following accomplishments:

First Lieutenant WOMACK consistently demonstrated an exemplary degree of leadership and professional expertise. Through his skillful guidance, the Marine Corps Exchange began a steady recovery from years of mismanagement. During his tenure, he reduced inventory loss from nine percent to approximately one percent and a 2.3 million dollar Exchange debt to approximately one million dollars. Resourceful and innovative in his approach to improving customer service, the Exchange introduced a Radio and Television Repair Shop, Photographic Service, Income Tax Service, Oriental Food Concession, and many other badly needed services. Through personal example, he also motivated Exchange employees to attain higher levels of customer service and satisfaction. His innovative ideas greatly enhanced the morale and welfare of the Marines assigned to the Barracks. By his initiative and selfless devotion to duty, First Lieutenant WOMACK upheld the highest traditions of the Marine Corps and the United States Naval Service.

3. Plaintiff argues that his reporting senior erred by using "treatment" instead of "offense" when describing the DWI conviction. It appears, however, that neither term is correct. Under North Carolina law, there are five levels of punishment for a DWI offense. Level one is the most serious, mandating a minimum fourteen day incarceration period. Level five is the least severe and is awarded when mitigating factors outweigh any aggravating factors. See N.C Gen.Stat. § 20–179

(1988). There is no indication in plaintiff's military record that he was absent from duty because he was serving a fourteen day incarceration in a North Carolina county jail, which would have been the case had he been subject to a level one punishment. Furthermore, there is no description in plaintiff's record of the difference between a "level one" and "level five" punishment or that "level one" is to be considered more serious than "level five."

In December 1992, after the successive pass-overs for selection to Captain and the pass-over by the FY 93 CWO–4 board, plaintiff reviewed his Official Military Personnel File (OMPF). During this review plaintiff discovered that a copy of his NCM was not in his record. Although a copy of this citation was not placed in plaintiff's OMPF until December 1993, plaintiff's receipt of the NCM was reflected on his March 5, 1992 Master Brief Sheet[4] which was used by the FY 93 Captain selection board. Indeed, the accomplishments which merited commendation were described in plaintiff's August 1990 fitness report which stated:

> Professional knowledge, self-motivation and determination, tireless efforts have made superb contributions to the efficient functioning of the Marine MWR [Morale, Welfare and Recreation] program. The Marine Corps Exchange had suffered heavy losses in retail merchandise shortages and badly needed profits in [the] three years prior to First Lieutenant Womack's arrival. Along with these problems, the Exchange was in debt over $2,000,000 and over stocked with about $700,000 in aged merchandise. A detailed look at the Exchange today, reveals an astonishing improvement. The rate of the inventory loss has been reduced from 9% to approximately 1%. The $2,000,000 debt has been reduced to 1.5 million dollars. The aged inventory has been reduced significantly to $150,000. His dedication to duty and exceptional management skills have saved the Exchange from possible bankruptcy. First Lieutenant Womack has been appointed as Deputy Director Morale, Welfare and Recreation. Additional duties include overall management of the Club System and other MWR programs. He received recognition from the Commander Naval Base, Guantanamo Bay, Cuba for providing quality financial management counselors. He is currently pursuing B.S.B.A. [sic] degree during off duty hours. Performance, across the board, has been nothing less than OUTSTANDING. First Lieutenant Womack is a problem solver, good in business analysis and stays

abreast of new MWR changes and policy guidelines. He is richly deserving of promotion to CAPTAIN, and is highly recommended for promotion to that rank.

Similarly, plaintiff's September 1991 fitness report praised him for providing "reliable advice and support for local MWR activities," noted that he possesses "significant growth potential and is capable of handling increased responsibility," and that he had been recommended for the Navy Commendation Medal. Plaintiff was considered "eminently qualified, deserving for promotion to the rank of Captain," in his February and September 1992 fitness reports.

Also, during review of his OMPF, plaintiff discovered that an April 1986 letter submitted by his reporting senior for correction of his 1984–1985 fitness report was not in his OMPF. This letter noted that plaintiff should have been marked "NO" (not observed) for Item 13f, "Training Personnel" rather than "AA" (above average).

On June 28, 1993, plaintiff petitioned the Board for Correction of Naval Records (BCNR or Board) for the following relief: (1) on his 1984–1985 fitness report, change the incorrect "AA" rating for Item 13f, "Training Personnel" to "NO" (not observed); (2) on his 1988–1989 fitness report, change the "AA" rating for "Judgment" to "OS" (outstanding), and change the description of his treatment program from "level one" to "level five"; and (3) removal of the failure of selections for promotion to Captain and Chief Warrant Officer–4.

In its February 10, 1994 decision denying plaintiff's request for relief the BCNR concluded that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." In reaching its conclusion, the BCNR made the following findings:

> The Board substantially concurred with the comments contained in the report of the PERB [Performance Evaluation Review Board] in concluding that the contested fitness reports should not be modified as requested. Regarding the fitness re-

---

4. At oral argument, defendant explained that the Master Brief Sheet is supposed to reflect the contents of a member's record, and in fact is derived from a member's record.

port for 6 August 1984 to 5 February 1985, the Board recognized that your reporting senior's letter has been signed. Regarding the fitness report for 1 June 1988 to 31 March 1989, the Board was unable to find that this report was improperly used in lieu of punishment. The Board did not find that you were marked too severely for a one-time alcohol related incident. The Board found it would not be a material correction to change the reference to level five "treatment program" to level five "offense". You are correct that "compelling evidence" is not the correct standard of proof for fitness report cases, but the Board found that you did not meet the correct standard.

The Board found an insufficient basis to strike your failures before the Fiscal Year (FY) 1991 through 1993 Captain Selection Boards, or to strike your failures before the FY 1993 and 1994 Chief Warrant Officer-4 (CWO-4) Selection Boards. The Board did recognize that the advisory opinion from MMOA-4 was wrong in stating that nobody was ever ranked below you, since one officer was below you in the report for 1 January to 26 August 1992. However, the Board otherwise agreed with MMOA-4 in concluding that your selection for promotion to captain and CWO-4 would have been unlikely, even if the fitness report for 1 June 1988 to 31 March 1989 had reflected a "level five offense", rather than a "level one treatment program", and even if all selection boards convened after you received the Navy Commendation Medal had reviewed it. The Board noted that the medal was not awarded until 10 September 1991, after both the FY 1991 and 1992 Captain Selection Boards (convened in April 1990 and March 1991, respectively). In denying removal of your failures of selection for promotion, the Board also observed that you could have submitted a copy of the medal citation to all of the selection boards convened after you received it.

On February 22, 1994, plaintiff submitted additional materials in support of his petition. The BCNR treated these materials as a petition for reconsideration which it subsequently denied on March 9, 1994. The BCNR, in a letter by Executive Director W. Dean Pfeiffer, concluded:

After a careful review of your letter and attachments, I am unable to find any new and material evidence or other matter not previously considered by the Board. I note again that CWO-3 Womack has been ranked above only one other officer his entire career as a warrant officer, which certainly has a bearing on his competitiveness. I also note that the recommendation for a Navy Achievement Medal and completion of the Warfighting Skills professional military education course occurred after his failures of selection.

This suit was filed on May 10, 1994, asserting Tucker Act jurisdiction (28 U.S.C. § 1491 (1988 & Supp. V 1993)).

## DISCUSSION

■ Defendant argues that plaintiff's claim that he was unlawfully passed over for promotion because of errors in his official record, presents a nonjusticiable issue and therefore his complaint should be dismissed. Justiciability depends upon "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded...." *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). A case is thus reviewable and justiciable only if it is " 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.' " *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)) (citations omitted). Defendant argues that there are no tests or standards by which a court might judge the propriety of the Navy's decision that any errors in plaintiff's records were harmless. Thus, argues defendant, even if the court were to entirely rewrite plaintiff's military history, the court still could not make the decision that the errors were harmful because, "it would be

nothing more than speculation that the [selection board] decision would have been different." *Murphy v. United States*, 993 F.2d 871, 873 (Fed.Cir.1993).

Plaintiff responds with the well established principle that "government officials must follow their own regulations, even if they were not compelled to have them at all." *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). In the instant case, plaintiff asserts that defendant failed to abide by its own directives. Plaintiff's claim, in essence, is that the selection boards failed to consider him, as required by statute and regulations, on a record that was "a fair and substantially accurate and complete portrayal" of his career.[5] Thus, plaintiff argues, Congress and the Secretary of the Navy have established the standard that promotion selection boards must have before them "pertinent records" which present a fair and accurate portrayal of an officer's career when considering that officer for promotion.

■ The Federal Circuit has recognized that there are "thousands of [ ] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." *Murphy*, 993 F.2d at 871. In *Voge*, however, the court noted the difference between "relatively minor and routine military personnel actions," that are nonjusticiable and "the denial of all pay and allowances through allegedly unlawful discharge from military service because of statutory violations by the military departments" that are justiciable. *Voge*, 844 F.2d at 780, n. 1. The Federal Circuit recently reiterated that "although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins v. United States*, 68 F.3d 1317, 1323

(Fed.Cir.1995) (citations omitted) (emphasis in original). Furthermore, the Court of Claims, our predecessor court, had consistently reviewed the actions of selection boards when the record presented did not portray an officer's career in a "fair and equitable" manner. *See, e.g., Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (1982); *Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704 (1980); and *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). Because plaintiff alleges that the Secretary did not present the selection boards with a fair and accurate record of his career, the claim is justiciable. *See Voge*, 844 F.2d at 779. Defendant's motion to dismiss is therefore, denied.

–A–

■ Congress has entrusted the primary duty of correcting military records with the correction boards. *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813–14. Plaintiff has the heavy burden of rebutting the "presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Id.* In *Sanders*, the Court of Claims stated:

> Although correction board decisions with pay consequences are reviewable here, it cannot be forgotten that Congress entrusted primary responsibility for the record-correction function to the service Secretaries acting through correction boards. Thus, while we may disagree with a correction board about whether or not a specific situation was unjust, we will not substitute our judgment for the board's when reasonable minds could reach differing conclusions.

219 Ct.Cl. at 302, 594 F.2d at 814 (citing *Snell v. United States*, 168 Ct.Cl. 219, 227, 1964 WL 8544 (1964)). Nevertheless, selection boards do not have unfettered discretion in the manner they review officer's for pro-

---

5. The Marine Corps Promotion Manual provides: The Commandant of the Marine Corps shall also furnish the Official Military Personnel File (OMPF) and Master Brief Sheet (MBS) of each officer to be considered by the [selection] board. The OMPF shall contain all documents, including evaluations, that are essential for a fair and substantially accurate and complete portrayal of an officer's career.
Marine Corps Promotion Manual, v. 1, § 1, subch. 2105, ¶ 1b; *see also* SECNAVINSTR § 1412.9A, ¶ 11c; 10 U.S.C. §§ 576(a), 578, and 615(a)(2)(A), (b)(3).

motion. Hence, the Court of Claims has also stated that:

> [T]he selection procedure must follow the law. The documents which are sent to a selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer's record. If a Service Secretary place[s] before the Board an alleged officer's record filled with prejudicial information and omits documents which might have mitigated the adverse impact of the prejudicial information, then the record is not complete, and it is before the Selection Board in a way other than as the statute prescribes.

*Weiss v. United States,* 187 Ct.Cl. 1, 7, 408 F.2d 416, 419 (1969).

Plaintiff is bound by the BCNR's determination, unless he establishes through cogent and clearly convincing evidence that the Board's determination was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). Plaintiff must show:

> *both* that (a) there was a material legal error or an injustice [footnote omitted] in the proceedings of the correction board ... which led to the adverse action against him, *and also* (b) that there is *an adequate nexus* or link between the error or injustice and the adverse action (*e.g.,* passover and non-selection for promotion).

*Hary,* 223 Ct.Cl. at 15, 618 F.2d at 706–07 (emphasis added) (citations omitted). If plaintiff successfully establishes a "substantial connection between the error and the passover," the burden of persuasion shifts to the defendant to show the "harmlessness" of the error. *Engels,* 230 Ct.Cl. at 468, 678 F.2d at 176; *Sanders,* 219 Ct.Cl. at 306, 594 F.2d at 816.

**–B–**

Plaintiff alleges that the action of the BCNR in denying his request for relief was arbitrary and capricious.[6] The alleged errors of the BCNR are as follows: (1) the finding that the errors in plaintiff's 1984–1985 and 1988–1989 fitness reports were not material errors; (2) the finding that it was unlikely that plaintiff would have been promoted even if the selection boards had reviewed his Commendation Medal; (3) its statement that only one person was ranked below plaintiff during the 1991–1994 promotion period; (4) it improperly shifted the burden to plaintiff to submit his medal award to the selection boards; and (5) the Board failed to base its decision on a balanced consideration of all the evidence presented.

### 1. Plaintiff's 1988–1989 Fitness Report

First, plaintiff disputes the BCNR's finding that the change from level five "treatment program" to level five "offense" in reference to his DWI conviction was not material. Plaintiff attributes this "killer language" as the primary cause of his passovers. Plaintiff contends that the reference to completing a "treatment program," conveyed the erroneous impression that his alcohol usage was abusive and required medical treatment. As proof of the materiality of this error, plaintiff asserts that "Plaintiff's commander, COL Holle, stated that plaintiff's promotion passover stemmed 'from his DWI incident in late 1988.'" A closer reading of Colonel Holle's April 1993 statement in support of plaintiff's application to the BCNR does not support the conclusion that plaintiff was passed over because of his 1988 DWI conviction. The statement plaintiff quotes from provides:

> I have known WO Womack for over 6–months and I have seen him with some regularity over this period of time. I have talked to [plaintiff] about his pass-over for promotion to Captain which *appears to stem* from his DWI incident in late 1988.

---

6. Plaintiff also alleges that the BCNR's decision violates the due process clause of the Fifth Amendment. Compl. at ¶ 29. The basis for this claim is not clear from plaintiff's submissions to the court. However, it is well settled that violations of the due process clause do not obligate the United States to pay money damages, therefore this court is without jurisdiction over any such claim. *J & L Janitorial Servs., Inc. v. United States,* 231 Ct.Cl. 837, 838, 1982 WL 25323 (1982). *But see Dodson v. United States Gov't, Dept. of Army,* 988 F.2d 1199, 1208, n. 8 (Fed. Cir.1993).

I have not observed him drinking any alcoholic beverage while at Beaufort and he advises that he has been an abstainer since the 1988 incident. (emphasis added)

Contrary to plaintiff's assertion, this statement does not indicate that Colonel Holle had independent or first-hand knowledge that plaintiff's DWI conviction was in fact the basis for plaintiff's passovers or that the selection boards premised their decisions on the belief that plaintiff had undergone medical treatment for alcohol abuse. Colonel Holle merely speculates as to the reason for plaintiff's successive passovers.

Plaintiff speculates that without this reference to "treatment," the "clear probability" is that he would have been selected for promotion by the FY 93 CWO–4 selection board when the promotion rate was 84.8%. The court disagrees. There is no substantial evidence that any of the selection boards premised their decisions on the belief that plaintiff had undergone medical treatment for alcoholism. It is self-evident that the promotion selection process is a competitive one. It is not unusual for qualified officers to be passed over just because there are not enough promotion slots to be filled by promotion of eligible officers. *Brooks v. United States*, 213 Ct.Cl. 115, 117–18, 1977 WL 5206 (1977). Not every officer considered can be selected for promotion. Plaintiff's claim is mere speculation, and in essence asks the court to substitute its judgment relative to plaintiff's suitability for promotion for that of the selection boards. There is a presumption that in the absence of evidence to the contrary that the members of these selection boards performed their duties in a fair and impartial manner and in accordance with law, and that in so doing they gave plaintiff due and proper consideration along with all of the other candidates for promotion. *Brenner v. United States*, 202 Ct.Cl. 678, 692, 1973 WL 21354 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974). The merits of such a decision are committed wholly to the discretion of the military and are not subject to

judicial review. *Adkins*, 68 F.3d at 1322–33 (citations omitted). Plaintiff has not persuaded the court by clear and cogent evidence that the reporting senior's section C description of his DWI conviction was a material error in his record, or that the "AA" rating for Item 14g, Judgment, was unwarranted in light of his DWI conviction.

Moreover, as noted . above, plaintiff declined to submit a statement concerning his conviction for his official record or attach a statement to his 1988–1989 fitness report. Plaintiff, as his acknowledgment in box 24 of the report indicates, reviewed his reporting senior's description of the DWI conviction before signing the report on June 10, 1989; hence, plaintiff confirmed or at least consented to his reporting senior's description of the DWI conviction. Incredibly, plaintiff argues that even though he reviewed his report it was not his responsibility to verify its accuracy. There is no reasonable explanation as to why plaintiff did not seek to at least correct the description of the incident in his fitness report at the time he reviewed the report, or after his subsequent passovers by the FY 91 and FY 92 selection boards.[7] Because plaintiff signed the report in June 1989 and thereby acknowledged he had "seen the completed report," plaintiff's claim that he only discovered the misdescription in December 1992 rings false. On the record before the court it is not unreasonable to view the information on plaintiff's fitness report in this regard as insignificant and immaterial.

Regardless of whether plaintiff, as he alleges, was advised that his DWI conviction would not be used to deny him promotion, plaintiff nevertheless could have ensured that the conviction was described differently. While the reporting senior might have assured plaintiff that the adverse mark would not be used to deny him promotion, there is no way she could have assured plaintiff that superior officers would not consider such an adverse mark differently, thus plaintiff signed the report with the remark as written

---

7. In his post oral argument affidavit, plaintiff states that he signed the report without reviewing it because, "I had never heard of anyone's career being adversely affected by a DWI, especially one as minor as mine." This observation

supports rather than detracts from the Board's decision in this case which was based on plaintiff's competitive standing in relation to others on the promotion ladder rather than on the DWI incident.

at his peril. *See Colon v. United States,* 32 Fed.Cl. 481, 489–90 (1994) (stating rule that courts will not inquire into the subjective perceptions of the employee nor the subjective intention of the agency, rather the test is how a reasonable person would have understood the statements of the reporting senior). Furthermore, plaintiff had the opportunity to alert the selection board of "any matter of any significant importance for the purpose of attaining a substantially accurate and complete record." See The Marine Corps Promotion Manual, Marine Corps Order, P 1400.31A, ¶ 2107 (September 20, 1990).[8] It would be sheer speculation to accept as fact that the description of the DWI conviction was a significant factor in plaintiff's failure to be promoted. To the extent that the description of the DWI conviction was incorrect, the court concludes that it was harmless error. Harmless error unrelated to an officer's passover does not require judicial relief. *Riley v. United States,* 221 Ct.Cl. 308, 312, 608 F.2d 441, 443 (1979). Moreover, plaintiff was in a position to rectify the description at an early time if he really believed it to be significant error.

### 2. *Plaintiff's 1984–1985 Fitness Report*

■ Likewise, plaintiff argues that the "AA" (above average) instead of "NO" (not observed) rating in his 1984–1985 fitness report caused his career to be portrayed in a less than "fair and substantially accurate" manner. As with the 1988–1989 fitness report, plaintiff claims he did not discover that

the correction letter was missing from his OMPF until after reviewing his OMPF in December 1992.[9] Relying on *Dodson v. United States Gov't, Dept. of Army,* 988 F.2d 1199 (Fed.Cir.1993), plaintiff argues, in essence, that any error in an officer's fitness report is per se legal error which requires a re-review by the selection board of that officer's corrected record. *Dodson* does not support such a broad proposition. In any event, the facts in this case are distinguishable from *Dodson.* In *Dodson* the Federal Circuit held that the Army's misstatement of Dodson's enlisted evaluation report (EER) score resulted from the arbitrary and capricious failure to correct an acknowledged mistake. Although the Army did not dispute its error, it failed to place the correct EER score in Dodson's OMPF. Consequently, when Dodson appealed to the Reenlistment Appeals Board and the Army Board for Correction of Military Records (ABCMR), which requested advisory opinions from the Judge Advocate General (JAG) and the Army's Military Personnel Center (MILPERCEN), all considered Dodson's case with an EER for the period in question, "Unrated, EER Appeal." On those facts the Army failed to persuade the court of the harmlessness of its error. The court in *Dodson* found procedural error based on the Army's violation of its own regulations. Indeed, the court in *Dodson* found "bureaucratic bungling" pervasive of the procedural error which served to underscore the courts decision in *Dodson.*

8. The court notes that in plaintiff's June 28, 1993 application to the BCNR, he did not take issue with the use of "treatment program" rather than "offense." Instead, plaintiff sought to correct only the level of the offense—from one to five—and in fact, uses the word "treatment" when describing the offense level. Plaintiff's counsel wrote:

It should be noted that the express language used by the rater in this fitness report is erroneous. The rater describes this as a "level one treatment program". In fact, the treatment rendered was for a level five (the lowest) offense.

Indeed, plaintiff in his supporting statement specifically identified "level one" as the erroneous language in the fitness report. It appears from the record that the first time plaintiff expressed concern over the use of the word "treatment" was in his Reply to the PERB's advisory opinion.

In that opinion, the PERB did in fact make the correction requested by plaintiff, i.e, it modified the contested fitness report to read "Lt Womack successfully completed the level five treatment program required by Onslow county for first time offenders."

9. Although plaintiff steadfastly denies ever having received his OMPF until he requested it, he does not dispute defendant's contention that he should have received his MBS annually, beginning in 1988. The MBS provides an overview of an officer's record, including awards and all but the narrative section (section C) of each fitness report. If plaintiff did receive his MBS in 1988, as defendant contends he should have, it is not unreasonable to assume that he should have then discovered, from the information contained thereon, that his 1988–1989 fitness report had not been corrected. *See Brooks v. United States,* 213 Ct.Cl. 115, 118, 1977 WL 5206 (1977).

In contrast to *Dodson,* the BCNR and the Personnel Management Division (PMD) considered plaintiff's appeal with knowledge of the correct fitness report rating relative to plaintiff for the 84–85 fitness report. Nevertheless, the BCNR concurred with the PMD's conclusion that "even if the record were corrected as requested, i.e., change "AA" to "NO," it would not add sufficient strength to overcome jeopardy and make the record competitive with those of selected contemporaries." The PMD found that marks of less than outstanding in other "Section B" items—Training Personnel is one of twenty-one Section B items—appeared in plaintiff's record more frequently than in the records of selected contemporaries. Plaintiff has not presented any evidence to dispute this contention.

### 3. Plaintiff's Navy Commendation Medal

█ Plaintiff argues that the BCNR erred in its conclusion that it was "unlikely" that plaintiff would have been promoted "even if all selection boards convened after [receipt of] the Navy Commendation Medal had reviewed it." This conclusion, plaintiff contends, is "unsupported by substantial evidence, constitutes material error and is contrary to law." The fundamental question in this case is whether plaintiff's record before the selection boards portrayed his service career on a "fair and equitable basis." *Sanders,* 219 Ct.Cl. at 303, 594 F.2d at 814. Even if the court assumes that the actual Navy Commendation Medal was not in plaintiff's official records, the court is not persuaded that this omission caused plaintiff's record to be presented in an unfair manner. As noted above, plaintiff's reporting seniors enthusiastically praised plaintiff's capabilities in his fitness reports and consistently recommended him for promotion. Moreover, plaintiff's August 1990 fitness report fully describes plaintiff's service to the Exchange system which merited the NCM. Plaintiff's March 5, 1992 Master Brief Sheet lists the citation in the "Decorations" section. Therefore, one could reasonably con-

clude that the selection boards were aware of this award and the service that merited it, when considering him for promotion.

The problem for plaintiff in this case was that he was one of a number of individuals eligible and qualified for promotion. Because only a limited number could be promoted, plaintiff was found not to be the best of the best sufficient to entitle him to one of the open promotion slots. *See Brooks,* 213 Ct.Cl. at 117–18. Accordingly, the court is not persuaded that the omission of the actual citation caused plaintiff's record to appear significantly worse than it should have appeared, or that its omission was material to promotion determinations.

### 4. Plaintiff's Remaining Allegations of Error

Plaintiff alleges that the BCNR's adoption of the Personnel Management Division's (PMD) finding that only "one officer was below you in the report for 1 January to 26 August 1992" was material error. There is no evidence before the court that the cited statement was incorrect. Plaintiff only asserts that he was unaware of his value and distribution marks because he did not have access thereto. Thus, plaintiff's attempt to impugn the integrity of the PMD and BCNR by suggesting that they are unlawfully attempting to justify plaintiff's nonselection by the submittal of "cryptic and legally insufficient comments, implicitly derogatory and produc[ing] an arbitrary conclusion, without evidentiary foundation" is without merit and runs counter to the precept mentioned earlier that military administrators are presumed to discharge their duties lawfully and in good faith. *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813–14. Plaintiff, in fact, had the opportunity to review his value and distribution marks, which are part of his official record, prior to the convening of each selection board considering him for promotion. Marine Corps policies and procedures provide officers access to and encourages them to review their OMPFs.[10] Plaintiff did not order his OMPF

---

10. By affidavit, William G. Swarens, Head of the Personnel Management Branch (Code MMSB), Personnel Management Division, Headquarters, U.S. Marine Corps, avers that:

The Marine Corps Performance Evaluation System Manual (MCO P1610.7D), paragraph 8003.1.d, directs that all officers in the regular promotion zone for the first time take action to

until he had been passed over for promotion four times (three times for Captain and one time for CWO–4).

Plaintiff also alleges that the BCNR erroneously denied his discovery request in violation of 32 C.F.R. § 723.4(e). This section provides in part:

> The applicant shall have access to such official records as are deemed necessary to an adequate presentation of his case. It is the responsibility of the applicant to procure such evidence not contained in the official records of the Department of the Navy as he desires to present in support of his case.

32 C.F.R. § 723.4(e)(1) (1994). In response to plaintiff's request for the records of the officers plaintiff was compared with, The BCNR stated:

> The Board did not consider it necessary to obtain records of selectees from the selection boards involved. Accordingly, the Board did not ask HQMC to provide them, and your counsel's request to review such records should be addressed directly to HQMC.

Thus, the BCNR did not deny plaintiff's discovery request; it merely deemed the records sought unnecessary for its review.

obtain a copy of the OMPF if it has not arrived within six months of the convening date for the promotion board. The Marine Corps Individual Records Administration Manual (MCO P1070.12), paragraph 1001.1, and MCO P1400.31A, paragraph 2100, similarly emphasize this duty. Additionally, an officer may obtain his OMPF at any time by submitting a written request to MMSB. Paragraph 8002.2 of MCO P1610.7D states that Marines should order their OMPF at least every two years and review it for accuracy.

Furthermore, The Marine Corps Promotion Manual (MCO P1400.31A), paragraph 2400.4 provides:

> It is each officer's duty and responsibility to review his or her official records periodically, to ensure that the record represents an accurate, complete, and fair portrayal of the officer's career. Those officers who fail to take appropriate action to review their records must accept the consequences of an inaccurate or incomplete record.

11. Plaintiff's claim that the BCNR shifted the burden to plaintiff to submit his Navy Commendation Medal award to the selection boards is based on the BCNR's comment that "[plaintiff]

The court finds plaintiff's remaining arguments similarly unavailing.[11] Based upon a review of the Administrative Record, the parties' pleadings, and oral argument, the court concludes that plaintiff has failed to establish the existence of material error in his record at the time of review before the selection boards or that the BCNR's decision was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence. The facts simply do not establish that plaintiff's official record as presented to the selection boards was materially inaccurate. Where reasonable minds can differ on the evidence, this court may not overturn the BCNR's decision. *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 814. Unlike the *Dodson* case, relied on by plaintiff, the record in this case fails to show undisputed evidence that clearly and convincingly demonstrates that plaintiff has suffered legal error.

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, facts that affect the outcome of the suit, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Plaintiff has

could have submitted a copy of the medal citation to all of the selection boards convened after you received it." The court is not persuaded that the Board shifted the burden to plaintiff to submit his medal to the Board. This comment follows the Board's finding that it was "unlikely" that plaintiff would have been selected for promotion even if the selection boards had reviewed the NCM. It is reasonable to infer that the Board determined that the inclusion of a copy of the actual citation would not significantly add to plaintiff's record.

Additionally, the court is not persuaded that the Board failed to base its decision on a balanced consideration of all the evidence presented. Plaintiff's claim is premised on the assumption that he was passed over for promotion because of his DWI conviction. As noted in the main text, plaintiff has not established that the use of "treatment," instead of "offense," in reference to his DWI conviction, portrayed his career in a less than "fair and equitable" manner. The evidence plaintiff alleges the Board did not consider, are averments by plaintiff's peers and superiors that plaintiff has not taken an alcoholic drink since his DWI conviction.

failed to meet his burden of establishing the existence of a material fact in dispute, that is, one that establishes that the BCNR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk will dismiss the complaint. No costs.