SkeltoN, Judge,
delivered the opinion of the court: *
Plaintiff, a lieutenant in the United States Navy with over ten and one-half years of active duty service, who was honorably discharged effective June 7, 1968, after having been passed over for promotion to lieutenant commander by two successive selection boards, seeks recovery of both the active duty and retirement pay of a lieutenant commander.
The plaintiff’s suit is not based on an illegal discharge. Instead, he claims that the actions of the selection boards in twice passing over him for promotion and failing to select him for promotion to lieutenant commander, as shown below, were arbitrary, capricious, and contrary to law. The case was heard by our Trial Judge C. Murray Bernhardt.
We have carefully considered the pleadings, briefs, and oral arguments of the parties and have concluded that the plaintiff is not entitled to recover. The basic facts in the case are as follows:
Plaintiff enlisted in the United States Marine Corps Reserve in 1952 and was appointed to the United States Naval Academy where he graduated as an ensign in June 1958. He was promoted to lieutenant (jg) in 1959, and to lieutenant in 1967 (effective retroactively to June 1,1962). He was honorably discharged effective June 7, 1968, having been passed *681 over for promotion to lieutenant commander by two successive selection boards.
While plaintiff was serving as weapons officer on the U.S.S. Luce on January 19, 1966, under the command of Commander Lademan, a 1% ton nuclear missile was dropped on the deck of the Luce while the Luce was anchored at Mayport Naval Air Station, Florida. The missile did not explode, there were no injuries, but there was considerable publicity over the accident because of its potential consequences. As weapons officer, the plaintiff had technical responsibility for the incident, whether or not he was negligent.
On January 22, 1966, an informal board of investigation was convened to inquire into the circumstances of the missile accident. Plaintiff appeared voluntarily before the board and testified on January 29, 1966. On the next day, plaintiff requested that he be made a party to the investigation, but after consulting on January 31, 1966, with his father, a lawyer, plaintiff withdrew his request to be made a party. However, the board advised the plaintiff that he had been made a party to the investigation. Plaintiff was assigned military counsel, and plaintiff’s father, a retired Marine legal officer, was permitted to act as plaintiff’s individual counsel to assist Lt. Olson, the assigned military counsel.
At the resumption of the board proceeding on February 9, 1966, plaintiff was called as a witness but declined on advice of counsel to testify. Plaintiff and his counsel did though attend the board sessions until it adjourned on February 17, 1966. On that date, plaintiff’s security clearance was terminated. The board of investigation record is classified as “Secret” and is not in evidence, and was not furnished to the selection boards nor considered by them, but plaintiff and some others in his behalf have seen the record.
The board of investigation recommended that plaintiff be issued a punitive letter of admonition relative to a total of eight alleged specified derelictions in the performance of his duty. Following receipt of the board proceedings, Admiral Kuckner, the convening authority for the board, issued on May 11,1966, a letter of censure in the degree of admonition which was received by plaintiff on May 28,1966. The letter *682 referred to the missile mishap investigation and listed the following four personal derelictions on plaintiff’s part as weapons officer:
1. Deletion of several discrepancies relating to Weapons System check sheets which resulted in confusion and did not properly alert the Commanding Officer.
2. Knowingly permitted Commanding Officer to report corrections of discrepancies where such had not been corrected.
3. Failure to complete or insure completion of the assembly of weapons publications as required.
4. Failure to implement Weapons Department Organization as directed.
Following a series of communications relative to plaintiff’s efforts to obtain time extensions to file an appeal, plaintiff, on November 24, 1966, submitted his appeal wherein was set out ten assignments of error, i.e.:
1. Failure to designate plaintiff as a party at the initiation of proceedings.
2. Failure to afford him the rights of a party.
3. Refusal to permit him to withdraw his request to be made a party.
4. Failing to inform him of the reasons for concluding that he should be designated a party.
5. Making findings adverse to him.
6. Failing to afford him a fair and impartial hearing.
7. Subjecting his appointed counsel to improper influence.
8. Adversely commenting upon his exercise of his right not to testify.
9. Conducting proceedings at such time that he was unable to protect his interests.
10. Unduly and improperly harassing the efforts of his individual counsel.
On January 28, 196Y, Admiral Ruckner, in a letter to the Commander-in-Chief, Atlantic Fleet, advised that he had set aside the punitive letter of censure, and requested that the copy of the letter of censure previously forwarded to the commander-in-chief “be destroyed or returned to the originator,” namely himself. On February 9, 1967, the Commander-in-Chief, Atlantic Fleet, advised Admiral Ruckner *683 by letter that the letter of censure had been destroyed. The plaintiff was advised on January 28, 1967, by letter from Admiral Buckner, that he had set aside the letter of censure previously issued plaintiff, and, in conclusion, stated as follows:
Nevertheless, it is apparent that there were deficiencies in the Weapons Department on board UtSS LUGE (DLG7) and that as Weapons Officer you were responsible for the proper administration of this department. Although the circumstances as now presented do not warrant punitive action, it is considered that your performance prior to the incident involved was deficient. You are, therefore, to take the contents of reference (b) [the letter of censure] as a caution, not in the sense of Article 15, TJCMJ, but merely instructional in nature. [Reference (b) [the letter of censure] will not be made a part of your official record and will not be forwarded to higher authority. Its sole purpose is the improvement of your performance of duty.
Also on January 28, 1967, Admiral Buckner wrote to the Judge Advocate General, with copy to plaintiff, advising that he had set aside the letter of admonition and had issued a letter of instruction to plaintiff. Further, he requested that the investigation, as in the case of Commander Lademan, should be made a matter of interest in the official record of plaintiff. On January 31,1968, the Chief of Naval Personnel caused an endorsement to be attached to the records of the board of investigation which recited the instructions of January 28, 1967, received from Admiral Buckner and further stated as follows:
* * * However, lacking a supplementary investigation to reconcile the evidentiary matters in conflict, it is not considered appropriate to hold this investigation as a matter of interest in the official records of either CDB Lademan, the CO of LUGE, or L. T. Brenner. * * *.
Plaintiff was considered but not recommended for promotion to lieutenant commander by a selection board which met from September 21 to October 22, 1965. This was not considered a “pass-over” on plaintiff’s records, since plaintiff was below-the-promotion-zone on that occasion.
Plaintiff was thereafter considered for promotion to *684 lieutenant commander by two successive selection boards which met from September 27 to November 10, 1966, and from October 8 to November 21,1967. He was passed over by each of these selection boards, and under the provisions of 10 TJ.S.C. § 6882 (1964) a second pass-over for selection to lieutenant commander automatically results in separation the next succeeding June 30.[1]
In summarizing plaintiff’s 22' periodic fitness reports throughout his 10 years of active duty in the Navy, the trial judge found, in pertinent part, as follows:
23. (i) The plaintiff seemed capable of high achievement on many occasions, as witnessed in the honors and commendations which he won directly or indirectly * * *. "While the plaintiff’s ratings for the various categories would vary from period to period, or from rating officer to rating officer, the impression is gained from a close study of all of his fitness reports that the plaintiff excelled in such matters as ship handling, seamanship, gunnery, military bearing, loyalty, and self-expression, while he was sometimes average or less in matters of judgment, reliability, cooperation, and compassion with subordinates.
On December 6, 1967, after having been passed over by the second selection board, and having been transferred to a Navy Sub-Board of Inspection and Survey at Newport Naval Base, plaintiff requested an early discharge and a commission in the Naval Reserve. Plaintiff was honorably discharged June 7, 1968. Plaintiff testified that if he were offered reinstatement in the Navy he would decline; that his age, lengthy interruption of active duty, and the ineradicable blotting of his copy book would make his advancement too unlikely as a retread; and that he is now selling real estate.
*685 The plaintiff contends that his pass-overs for promotion to lieutenant-commander by two successive selection boards, which made discharge by the following June 30 mandatory mider 10 U.S.C. § 6382, were arbitrary, capricious, and contrary to law. He also contends that in the course of his appearance before a board of investigation by which he was tardily designated as a Party in Interest, the board’s proceedings, its recommendations, the issuance of a punitive letter of censure in the degree of admonition by the convening authority, the difficulties unfairly imposed on his efforts to obtain a time extension to appeal from the letter of censure, the ultimate withdrawal of the letter of censure and its substitution by an equally damaging letter of instruction for lodging in his official records, and the publicizing of these records by actions of the convening authority, violated his rights to due process guaranteed by applicable provisions of the Manual of the Judge Advocate General and of the Uniform Code of Military Justice.
The particular relevance of the plaintiff’s due process contention, especially as to the board of investigation phase, is not apparent. The plaintiff is not basing his cause of action in this case on what the board of investigation did. Accordingly, if there were any due process violations by the board of investigation, they would not be relevant, germane, nor controlling. In that regard, the cases of Conn v. United States, 180 Ct. Cl. 120, 376 F. 2d 878 (1967), and Cole v. United States, 171 Ct. Cl. 178 (1965) are clearly distinguishable. As stated above, this is not an illegal discharge proceeding per se where alleged due process violations are important. Bather, it is a proceeding to void plaintiff’s pass-overs by the two selection boards because they are alleged to have improperly considered, with relation to plaintiff’s promotion prospects, certain derogatory material which should not have been before them, material which might warp their judgment. This opinion is confined and limited to a consideration of that issue.
As long ago as Reaves v. Ainsworth, 219 U.S. 296 (1911), as explicitly as Orloff v. Willoughby, 345 U.S. 83 (1953), Norman v. United States, 183 Ct. Cl. 41, 392 F.2d 255 (1968), *686 cert. denied 393 U.S. 1018 (1969), Clinton v. United States, 191 Ct. Cl. 604, 423 F. 2d 1367 (1970), Arnheiter v. Chaffee, 435 F. 2d 691 (9th Cir. 1970), and Payson v. Franke, 282 F. 2d 851 (D.C. Cir. 1960), cert. denied, sub nom. Robinson v. Franke, 365 U.S. 815 (1961), and as recently as Muldonian v. United States, 193 Ct. Cl. 99, 432 F. 2d 443 (1970), the Federal courts have held in forthright terms and under varying factual contexts that they have neither power nor inclination to review military discretion in failing to assign, commission, or promote officers because, as stated in Orloff v. Willoughby, supra, at 93, 94:
* * * judges are not given the bask of running the Army. * * * The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. * * *
The given reason for this hands-off policy is particularly valid with respect to the recommendations of selection boards for officer promotions, for the record of ,an individual on the list of eligible candidates is to be contrasted with similar records of the often hundreds of other candidates on the same list. “* * * The criteria [i.e., for promotion] were for the board in its sworn judgment to apply for the good of the service. Suffice it to say that we are in no position to assess and appraise that record by itself even were we free to do so.” Payson v. Franke, supra, at 854.
Selection boards are composed of carefully chosen senior officers. Precautions are taken to avoid placing in a candidate’s file and available for inspection by the boards material which is unfairly prejudicial or derogatory to the candidate, such as incomplete investigations to which he is a Party in Interest. The proceedings of selection boards are secret. No record is kept as to precisely what data beyond fitness reports ¡and the individual’s personnel file the boards might consult or know about. A selection board must be provided with the names of all officers in the promotion zone and the records of all candidates are furnished to the board. *687 10 U.S.C. § 5706(10) (11). At the time the selection boards involved in this case met, an officer’s record, as specified in Article B-2201 of the Bureau of Naval Personnel Manual, consisted of the following:
B-2201. OFFICER’S RECORD
(1) An officer’s record maintained in the Bureau of Naval Personnel is intended to reflect the official history of his career in the Navy. It is the property of the Government and not of the officer concerned. This official record maintained for each Navy and Naval Reserve officer contains any document which bears or reflects on the character, performance, professional qualifications and fitness of the officer. It is composed of the following files and includes, but is not limited to, the documents indicated:
(a) 'Fitness Report Jacket—
1. Reports of fitness.
2. Letters attached to and officially submitted as a part of fitness reports.
3. Photographs.
4. Statements regarding unsatisfactory fitness reports and 'acknowledgment of any unfavorable matter therein.
(b) Selection Board Jacket—
1. Certificates: Birth, citizenship, education and training. Commissions, appointments, acceptances, waivers, oaths of office, classification changes, records of emergency data, Statement of Personal History (DD Form 398), certificates of security clearance, and documents certifying completion of security investigative requirements.
2. Copies of citations, awards, and letters of commendation or censure.
3. Reports of physical examination, medical surveys, personal biographies, transcripts of service, applications for commission, notices of separation, requests for change of duty and tenders of resignation, retirement requests, and other voluntary applications for separation from active duty.
4. Written communications from the officer concerned inviting the attention of the selection board to matters of record.
5. Statements of the officer in reply to adverse matter in his selection board jacket.
6. Extracts from the findings and recommendations of courts and boards concerning the officer. These *688 include statements of disciplinary action and promulgating letters of general courts-martial. Complete records of proceedings of courts-martial, inquiries, investigations, etc., are filed in tifie Office of the Judge Advocate General.
(2) Promotion Examinations. — Completed promotion examinations are filed in the Office of the Judge Advocate General.
(3) Access to officers record,. — (a) Access to the record of an officer is given only to the officer personally, to the clerk of a court of competent jurisdiction in response to a valid order from that court, to the officers of the Navy Department for use in the transaction of official business, and to the representative of the officer upon presentation by such person of a written authorization from the officer concerned.
(b) The record of an officer shall be available for inspection by him or his duly authorized agent, designated as such by him in writing.
(c) The record of an officer being considered for selection is available to the selection board for use in its deliberation.
(4) Incorporation of matter into officer's record. — (a) Any matter that is rightfully placed in the official record of an officer may not be removed except by special authorization of the Secretary of the Navy. The record is permanent. Each day of his service career the officer is building up material for his record which, when properly entered, is there to stay. A fitness report once submitted to the Chief of Naval Personnel becomes the property of the Navy Department and is not subject to change; however, a controversial report may be amended by correspondence forwarded via official channels, such correspondence to be attached to and made a part of the report in question. His record is reviewed when any change in his status is contemplated, such as assignment to duty, special details, examination for promotion, trial by general court-martial, or disciplinary action by the Chief of Naval Personnel, and it is of particular importance in the selection for promotion to the higher grades. In other words, in 'furnishing the material for his record the officer is daily adding to the evidence that •is the basis of his personal and professional reputation in the service.
(b) It sometimes happens that officers either do not put forth their best efforts or fail in the strict observance of the naval code, with no intention of being lax in the *689 discharge of their responsibilities or careless in their conduct, and without a full realization of the consequences. A mass of unfavorable matter, even though the separate entries are not in themselves of a grave nature, will naturally build up a prejudice against an officer which, in the aggregate effect, may be as detrimental to him in the years to come as a conviction by a general court-martial.
(c) Pursuant to United States Navy Regulations, adverse matter shall not be placed in ¡an officer’s record without his knowledge. In all cases it shall be referred to the officer reported on for such official statement as he may choose to make in reply. If the officer reported on desired to make no statement, he shall so state officially in writing. The Chief of Naval Personnel is liberal in his interpretation as to what constitutes adverse matter.
(d) No anonymous communications are made ia part of an officer’s record.
(5) Confidential matter. — Correspondence of a confidential nature from any source pertaining to an officer’s record is filed in the personal custody of the Head, Officer Records Branch, Bureau of Naval Personnel. In the majority of cases, there is no confidential matter pertaining to the officer, and consequently no confidential file. Matter of an unfavorable nature is first referred to the officer concerned before filing. Access to an officer’s confidential file is allowed as specified in paragraph (3) of this article, but authority must be granted by the Chief of Naval Personnel or the Acting Chief of Naval Personnel in each case in order to safeguard the individual officer’s interests and the security of certain private or confidential matter.
A selection board may not consider anything not authorized by the foregoing regulations. As may be seen from such regulations, an officer’s record may be inspected by him or his authorized representative. He may communicate with the board in accordance with 10 U.S.C. § 5755 inviting ¡attention to any matter of record in the Department of the Navy concerning himself. Adverse material or information is not placed in his record without his knowledge. If ¡any adverse reports are proposed to be included in his fitness reports, the officer involved must be so advised, and he is given ian opportunity to comment on such material or information at the time it is forwarded for inclusion in his jacket. It is within *690 the discretion of the Chief of Naval Personnel as to what constitutes adverse matter.
The governing statute applicable to selection boards provides that each member of the board “shall swear that he will, without prejudice or partiality, and having in view 'both the special fitness of officers and the efficiency of the naval service, perform the duties imposed upon him by law.” 'It is clear from the provisions of this law that the special fitness of officers and the efficiency of the naval service are of paramount importance in the selection for promotion process. The members of selection boards are officers with expertise in these fields.
In the instant case, the burden was on the plaintiff to show that one or both of his selection boards knew about and considered adverse evidence that was not in his record as defined above in the quoted provisions of the Bureau of Naval Personnel Manual. This he has failed to do. Although the plaintiff alleged that his selection boards knew about and considered the proceedings of the board of investigation, the record thereof and the decision it reached, there is no proof that any of this occurred. In fact, the evidence is to the contrary. It is true that there were two references in his fitness reports that he had been a party to an investigation, one being by Commander Drake as a rating officer as a part of his official duties, and the other by Admiral Eli T. Eeich in a letter of October 2, 1967, in plaintiff’s behalf to the 1967 selection board. Neither reference gave any details about the investigation nor the results of same. These references were properly in plaintiff’s fitness reports. It will be recalled that the plaintiff asked to be made a party to the investigation, although he tried unsuccessfully later on to withdraw the request. The letter from Admiral Eeich could hardly be considered adverse to plaintiff because it recommended that plaintiff be promoted to lieutenant commander and referred to him as “an outstanding young officer whom I felt had great potential.”
Plaintiff’s personnel file that was before both selection boards contained the Security Termination Statement issued to plaintiff on February 17, 1966, which mentioned that he *691 had been a party to an investigation. It was proper for this statement to be in his personnel file and the selection boards were entitled to consider it.[2]
The plaintiff also alleged that both selection boards knew about and considered the punitive letter of censure issued to him by Admiral Buckner which was later withdrawn and destroyed, as well as the letter of instruction issued to him by Admiral Buckner. There is no proof that the boards knew about or considered either of these letters.
We conclude that the selection boards did not select the plaintiff because of the contents of his fitness reports and personnel files as compared to those of other candidates, and that they did not consider any evidence outside of those reports and files. Some of the fitness reports were critical of the plaintiff. One such report was filed by Commander Lade-man for the period July 1, 1965, to February 19, 1966, in which plaintiff was criticized for his proneness to antagonize others, and in which he was given next to the lowest rating available. The plaintiff answered this criticism and Commander Lademan defended his criticism in writing. It is true that the plaintiff had received many awards and citations and top ratings for excellent service during his career. Our trial judge found that:
* * * [0]n the plus side the plaintiff impressed many of his rating officers as energetic, highly motivated, ambitious, dedicated, alert, intelligent, enthusiastic, resourceful, and highly qualified in ship handling, seamanship, and gunnery. On the minus side the plaintiff impressed some of his rating officers as being undiplomatic, dictatorial to subordinates, bored with routine duties, lacking judgment, impulsive rather than thought-Hí H»
This was the situation when the selection boards convened. The first board was given a quota of 324 promotions to lieutenant commander. Eighty to ninety percent of the candidates were selected for promotion. The second board had a quota *692 of 943 promotions with a limit of five percent of the officers who had been passed over once before. It selected eighty to ninety percent of the candidates. The plaintiff was passed over both times.
We must assume in the absence of evidence to the contrary that the members of these selection boards performed their duties as officers of the government in a fair and impartial manner and in accordance with law, and that in so doing they gave the plaintiff due and proper consideration along with all of the other candidates for promotion. It is obvious that this promotion procedure has a certain amount of “built-in” attrition, because all the officers considered cannot be promoted. No doubt the system is designed to encourage officers to render the best possible service at all times so that they may be selected for promotion when the time comes for them to be considered. It is natural and understandable for an officer, such as the plaintiff, who has been passed over, to feel that improper evidence was considered by the boards. However, it is quite a different thing to prove that such was the case.
The reluctance of the judiciary to review the promotion actions of selection boards is rooted not only in the court’s incurable lack of knowledge of the total grist which the boards sift, but also in a preference not to meddle with the internal workings of the military. The latter would not be sufficient by itself to deter judicial review, for with great frequency this and other Federal courts entertain claims based upon illegal discharges, failure to award disability retirement pay, and occasionally collateral attacks on court-martial convictions, all of which involve internal affairs of the military services. But in such cases the records available for judicial scrutiny are more finite and identifiable than are the deliberations of selection boards in discharging their promotion responsibilities, which are shrouded in mystery and imponderables. In Ricker v. United States, 184 Ct. Cl. 402, 398 F. 2d 454 (1968), the court set aside the action of a Navy promotion board in failing to continue the plaintiff in service because the board was illegally constituted, a clue as *693 to the court’s willingness to review promotion actions for procedural regularity.
The plaintiff relies on the cases of Weiss v. United States, 187 Ct. Cl. 1, 408 F. 2d 416 (1969); and Clinton v. United States, 191 Ct. Cl. 604, 423 F. 2d 1367 (1970). However, those cases are distinguishable. In the Weiss case the Board for the Correction of Naval Records had recommended that Weiss’ records be corrected to reflect that he was not reported unsatisfactory by the selection board, but the recommendation was disapproved by the Under Secretary of the Navy. The court held that the action of the Under Secretary was improper and ruled for the plaintiff. The plaintiff in the case before us did not apply to the Correction Board to change his record.
In the Clinton case a correction board changed an officer’s record to remove a first pass-over by an Air Force selection board because the selection board wrongfully considered certain derogatory material that prejudiced the officer’s selection. None of these facts exist in the instant case.
The plaintiff also cites the case of Rawlins v. United States, 197 Ct. Cl. 972 (1972). That case is a report of a review panel of three commissioners of this court on referral from the United States Senate pursuant to 28 U.S.C. §§ 1492 and 2509. The commissioners found that the plaintiff, Commander Rawlins, had an equitable case hut not a legal case, because he had not been promoted to captain due to an erroneous and arbitrary fitness report. That case is not a precedent binding on this court. Furthermore, the decision militates against the plaintiff in the instant case rather than for him.
The plaintiff asks this court to promote him to the position of lieutenant commander, and to award him back pay in that rank from the time he would have been promoted to that rank, and pay for the rank he would 'have acquired until his normal and natural retirement from active service, plus retirement pay as a retired Navy officer. Such a recovery is beyond our power to grant. Federal courts have held many times that they are not in the military “promotion business.” We adhere to that principle.
The promotion of an officer in the military service is a *694 highly specialized function involving military requirements of the service and the qualifications of the officer in comparison with his contemporaries, plus expertise and judgment possessed only by the military. No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure, which includes, but is not limited to, an analysis of the fitness reports and personnel files and qualifications of all of the officers considered, which in our case amounted to 1,267 officers in the 1966 and 1967 meetings of the two selection boards. The Supreme Court expressed these principles very well in the case of Orloff v. Willoughby, supra, a portion of which opinion is quoted above.
We hold that the actions of the selection boards in 1966 and 1967 in not recommending plaintiff for promotion were not arbitrary, capricious, or contrary to law, and that plaintiff is not entitled to recover any active duty pay or retirement pay, and that judgment is hereby rendered for the defendant and plaintiff’s petition is dismissed.

We are Indebted to Trial Judge Bernhardt for Ms opinion and findings of fact, much of which we have adopted. However, we reach a different result.

 Tie fact that plaintiff’s files showed that he had been a party to an Investigation did not automatically prevent his promotion. This is shown by the promotion of Commander Lademan who was a party to the same investigation and whose files revealed this fact.