William P. GREENE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–1677 C.

United States Court of Federal Claims.

April 29, 2005.

William P. Greene, Cheshire, Connecticut, pro se.

Kelly B. Blank, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director, all of Washington, D.C., for defendant. Major Susan Burger and Lt. Col. Vanessa A. Crockford, Department of the Army, Arlington, Virginia, of counsel.

## OPINION AND ORDER

WOLSKI, Judge.

The plaintiff, William P. Greene, filed this action, *pro se*, against the United States regarding his involuntary separation from the United States Army Reserve. This case has been transferred to this Court from the United States District Court for the District of Connecticut. The United States has moved to dismiss Mr. Greene's Complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for failure to state a claim upon which relief may be granted or, in the alternative, for judgment on the administrative record pursuant to RCFC 56.1.

## I. BACKGROUND [1]

Mister Greene, a former officer in the United States Army Reserve, was involuntarily separated for substandard performance of duty and given an honorable discharge on September 24, 1996. Compl. ¶ 39. Mister Greene initially enlisted in the Army Reserve on September 22, 1981. Admin. R. 30. He was appointed a Reserve Commissioned Officer of the Army in the rank of Second Lieutenant on February 25, 1988. Admin. R. 62–63. At Mr. Greene's request he was voluntarily assigned to "C" Company, 3d Battalion, 18th Infantry, located in Lawrence, Massachusetts, on May 26, 1992. Compl. ¶ 4. In the 18th Infantry Mr. Greene served as a rifle platoon leader, responsible for the health, welfare, and training of the soldiers in his platoon. When Mr. Greene transferred into the 18th Infantry he lived in Willington, Connecticut, approximately 115 miles from where the unit trained in Law-

---

1. For purposes of the Government's motion to dismiss, the Court takes as true the allegations in the complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Since the Government has moved, in the alternative, for judgment on the administrative record, information from the record that is not rebutted is also included in this section of the opinion.

rence, Massachusetts. Compl. ¶ 3. He then moved to Smithfield, Massachusetts, sixty-five miles from Lawrence, Massachusetts, so that he could care for his mother. Compl. ¶ 3. In March 1993, Mr. Greene again moved his residence, this time to Cheshire, Connecticut, which is approximately 170 miles from the Lawrence, Massachusetts. Compl. ¶ 5.

After his relocation to Cheshire, Mr. Greene attended all required active duty training with "C" Company for the months of March through June 1993. Admin. R. 186. On April 4, 1993, Mr. Greene received orders to attend Annual Training with his unit from July 24, 1993 to August 6, 1993. Admin. R. 299. During the unit's May and June drills, Mr. Greene made a verbal request to Capt. Michael Schwed, his commanding officer, that he be transferred to a unit closer to his residence in Cheshire. Compl. ¶ 6. Captain Schwed denied Mr. Greene's request for a transfer, informing Mr. Greene that he would not entertain transfer requests until after Annual Training. Compl. ¶ 6. Mister Greene called Capt. Schwed on July 24, 1993, to tell him that he intended to interview with a new unit on July 25, 1993. Compl. ¶ 7. Mister Greene further informed Capt. Schwed that by not granting his transfer request, he violated Army Regulation 135-9 para. 5-5, which, according to Mr. Greene, made any orders given to him by Capt. Schwed unlawful. Compl. ¶ 7. Accordingly, on July 24, 1993, Mr. Greene failed to report for Annual Training without obtaining proper leave. Admin. R. 195.

As a result of Mr. Greene's failure to report to Annual Training, Capt. Schwed placed an administrative "flag" on Mr. Greene's records so that he was unable to obtain favorable actions such as awards or promotions. Admin. R. 300. Moreover, Captain Schwed, on October 14, 1993, requested that Mr. Greene be involuntarily separated from the Army Reserve. Compl. ¶ 8; Admin. R. 107. On June 7, 1995, Mr. Greene appeared before an Administrative Separation Board, represented by counsel, to adjudicate Capt. Schwed's request that Mr. Greene be separated involuntarily from the Army Reserve. Compl. ¶ 32. Following the Board's adjudication, it recommended the in-voluntary separation of Mr. Greene. Admin. R. 170. The Board reconvened on October 24, 1995, to clarify its findings and recommend the type of discharge Mr. Greene was to receive. Admin. R. 162–63. The Board found that Mr. Greene: 1) "failed to take the necessary steps to ensure he wore proper rank"; 2) exercised poor judgment by failing to execute a planned training directive during a field training exercise; 3) "failed to assert leadership in his platoon by disregarding the commander's policy and intent [that he] remain alert and awake until all soldiers and equipment were accounted for after a field training exercise"; 4) "failed to follow instructions and was negligent in his failure to secure" equipment; 5) received a written reprimand on August 26, 1993, for "wrongful failure to report to active duty"; 6) received a "Relief for Cause" Officer Evaluation Report for the period May to August 1993 relieving him from his position due to sub-standard performance; and 7) gave testimony explaining his pay and promotion problems that was "not credible." Admin. R. 165. The Board determined that Mr. Greene should be honorably discharged. *Id.* The Army Reserve Command approved the Board's recommendation and, effective September 24, 1996, Mr. Greene was honorably discharged. Compl. ¶ 39.

On June 20, 1996, Mr. Greene filed a complaint in the United States District Court for the District of Connecticut. Compl. ¶ 37. The district court dismissed the complaint for failure to exhaust administrative remedies, because Mr. Greene had not filed an application for correction of military record with the Army Board for Correction of Military Records ("ABCMR"). Compl. ¶ 40. Therefore, on March 31, 1997, Mr. Greene filed an application for correction of his military record, DD Form 149, with the ABCMR. Admin. R. 305. In section nine of DD Form 149, which asks the applicant to state why he believes his record to be in error, Mr. Greene referred the ABCMR to an attached affidavit and 1996 district court complaint. Admin. R. 305. Mister Greene's explanation as to why his record should be corrected centered around the Annual Training he was scheduled to attend from July 24, 1993, to August 6, 1993, and his inability to

receive a transfer from the 18th Infantry to a unit closer to his residence in Cheshire, Connecticut. *See* Admin. R. 306–08; Admin. R. Add.[2] 238–41. Mister Greene asserted that Army Regulation 135–91 paragraph 5–5, titled "Maximum involuntary travel distance," set the maximum involuntary travel distance for Army Reserve soldiers at a fifty-mile radius relative to the soldier's drill site. Compl. ¶ 7; Admin. R. 308. According to Mr. Greene, because his commuting distance was 170 miles from Lawrence, Massachusetts, he should have been granted a transfer. Compl. ¶ 7; Admin. R. 308. From this Mr. Greene reasoned that had the Army Reserve not violated its regulation by refusing his transfer request, he would not have been obligated to report to Annual Training with the 18th Infantry and, therefore, he would not have received the letter of reprimand and eventual dismissal from the Army Reserve. Admin. R. 308. Thus, Mr. Greene argued, the ABCMR should correct his military record and reinstate him in the Army Reserve. *Id.*

The ABCMR issued its decision and Memorandum of Consideration of Mr. Greene's claims on November 24, 1998. Admin. R. 297–304. In summarizing Mr. Greene's requests, the ABCMR stated that "[i]n effect, [Mr. Greene seeks] reinstatement in the Reserve, promotion to captain effective 23 February 1995 and all back pays and allowances due him as a result thereof." Admin. R. 298. The ABCMR concluded that Mr. Greene "failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." Admin. R. 303. In support of its conclusion, the ABCMR found, *inter alia,* that: 1) Mr. Greene's "administrative separation was accomplished in compliance with applicable regulations with no indication of procedural errors"; 2) his assertions regarding commuting distance "do not demonstrate an injustice"; 3) there is no evidence that he ever "formally requested reassignment to another [unit] because of his commuting distance"; 4) he "was not excused from annual training and was therefore

AWOL"; 5) he did not "show to the satisfaction of the Board ... that the record is in error or unjust"; and 6) "there is no basis for granting [Mr. Greene's] request." Admin. R. 303.

As a result of the ABCMR's decision Mr. Greene again filed a complaint in the district court. The district court dismissed Mr. Greene's complaint for lack of subject matter jurisdiction as the court found that it was "highly likely" that the relief Mr. Greene sought translated into monetary damages in excess of $10,000, which under the Tucker Act must be brought in our Court. *Greene v. United States Army Reserve,* 222 F.Supp.2d 198, 201 (D.Conn.2002). On October 15, 2002, Mr. Greene filed a motion in the district court to have his case reopened and transferred to this Court. The district court granted Mr. Greene's motion, and pursuant to 28 U.S.C. § 1681, transferred the case to this Court. In a Complaint filed in this Court, by leave, on September 3, 2003, Mr. Greene seeks: 1) reinstatement in the Army Reserve; 2) back pay with applicable interest; 3) student loan repayment; ˙ 4) promotion to the rank of Captain with a guarantee of promotion to the ranks of Major through Colonel upon meeting the applicable requirements; 5) removal of all disciplinary records from his military personnel file; 6) reinstatement of his security clearance; 7) a company commander position; 8) the opportunity to attend the military intelligence advanced course; 9) the opportunity to perform active duty tours of his choosing; 10) the opportunity to perform a four-year Active Guard and Reserve tour with the unit of his choice; 11) punitive damages of ten million dollars; and 12) a criminal investigation and prosecution for the offenses committed by the Army regarding the administrative processing of his case. Compl. 19–20.

The Government has moved, under RCFC 12(b)(6), to dismiss Mr. Greene's Complaint for failure to state a claim upon which relief may be granted. The Government argues that the claims are non-justiciable because

---

**2.** The Addendum to the Administrative Record contains Mr. Greene's 1996 complaint that he filed in the U.S. District Court for the District of Connecticut and the exhibits he attached in support of his complaint. The Addendum was added to the Administrative Record by motion of the Government on November 9, 2004.

the plaintiff is not entitled to military pay except for duties actually performed; that the plaintiff's other claims are neither collateral to nor an incident of a claim for money damages and cannot be adjudicated by this Court; that the plaintiff's claims involve military assignments and security clearance determinations that are not subject to judicial review; and that the plaintiff's demand for punitive damages is not within the jurisdiction of this Court. Def.'s Mot. 7–10. In the alternative, the Government requests judgment on the Administrative Record, contending that the decision of the ABCMR to deny Mr. Greene's claims was not arbitrary, capricious, or contrary to law, and was supported by substantial evidence. *Id.* at 10–15.

## II. DISCUSSION

Although this Court accords a *pro se* plaintiff leniency in presenting his case, Mr. Greene's *pro se* status does not immunize him from the requirement that he plead facts upon which a valid claim can rest. *Paalan v. United States,* 57 Fed.Cl. 15, 16 (2003); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (stating *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers"). Before determining whether Mr. Greene's factual allegations, if proven, would entitle him to relief in our Court, this Court must first be satisfied that it has jurisdiction over the claims submitted.

### A. This Court's Jurisdiction

■ In order for this Court to have jurisdiction over a claim for money damages (other than pursuant to a contract) under the Tucker Act, 28 U.S.C. § 1491, a plaintiff must base its claim on a money-mandating statute; that is, one that creates a "substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2004) (plaintiffs must identify a "source of substantive law that creates the right to money damages"); *Contreras v. United States,* 64 Fed.Cl. 583, 587–88 (2005). Although Mr. Green has not clearly identified a money

mandating statute supporting his claims for back pay—citing 10 U.S.C. § 673, 10 U.S.C. § 938, 10 U.S.C. § 121, and 10 U.S.C. § 1552—Mr. Green has alleged that the Government owes him money for military service for which he has not been paid. Thus, while Mr. Greene has not himself identified a money-mandating statute to support his back pay claims, it is clear to the Court that, as Mr. Greene was a member of the Army Reserve, 37 U.S.C. § 206(a) is the money-mandating statute that provides the necessary basis for his back pay claim under the Tucker Act. *Palmer v. United States,* 168 F.3d 1310, 1313–14 (Fed.Cir.1999); *Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir. 1992).

■ One of Mr. Greene's claims is clearly beyond the jurisdiction of this Court—his request for punitive damages in the amount of ten million dollars. It is well-established that this Court lacks authority to grant punitive damages. *See, e.g., Garner v. United States,* 230 Ct.Cl. 941, 943, 1982 WL 25283 (1982); *Vincin v. United States,* 199 Ct.Cl. 762, 468 F.2d 930, 932 (1972). The United States has not waived sovereign immunity with regard to punitive damages. 28 U.S.C. § 2674. Thus, Mr. Greene's claim for punitive damages is DISMISSED for want of subject matter jurisdiction.

### B. Motion to Dismiss for Failure to State a Claim

Even though this Court has jurisdiction over Mr. Greene's case, Mr. Greene must, nonetheless, state a claim upon which relief may be granted. RCFC 12(b)(6). When the Court considers a motion to dismiss for failure to state a claim "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court's task in considering a motion to dismiss is not to decide if the plaintiff will eventually be able to succeed on the merits, but whether the plaintiff has alleged a set of facts sufficient to support his claim. *Id.* at 236, 94 S.Ct. 1683. Therefore, Mr. Greene must be able to state a set of facts that entitle him to back pay under 37 U.S.C. § 206(a), the money-mandating statute that

provides jurisdiction in our Court over his claim for damages against the United States.

Mister Greene has asserted three back pay claims. The first is for back pay for service he performed between February 24, 1991, and October 19, 1995, for which he was paid as a Second Lieutenant rather than at the higher pay grade of a First Lieutenant. Admin. R. Add. 241. On October 19, 1995, Mr. Greene was informed of his promotion to First Lieutenant, effective February 24, 1991, see Admin. R. 145; he claims, however, that he was not given the back pay attendant to that promotion. Admin. R. Add. 241. Mister Greene's second back pay claim is for money the Army Reserve allegedly erroneously collected from him for failure to perform drills from July 1991, to January 1992. Admin. R. Add. 240. The final back pay claim Mr. Greene asserts is for back pay for duties he would have performed had he not been involuntarily separated from the Army Reserve on September 24, 1996. Admin. R. Add. 241.

As this Court's and the Federal Circuit's precedents acknowledge, "[t]he military pay statutes [and] the military's administration of those statutes, ... recognize that there are two basic categories of pay entitlements for military service." *Palmer*, 168 F.3d at 1313; *see also, e.g., Dehne*, 970 F.2d 890; *Reeves v. United States*, 49 Fed.Cl. 560, 566 (2001); *Pohanic v. United States*, 48 Fed.Cl. 166, 167–68 (2000). The first category covers members of the uniformed services who are either on active duty or are "participating in full-time training ... or other full-time duty" so long as they are not a member of the Reserve. 37 U.S.C. § 204(a) (2000). Full-time active duty service members, by virtue of their status, are entitled to the pay of the rank to which they are assigned until they are properly separated from the service. *See id.* Thus, if a full time active duty service member is wrongfully denied the benefits of that status, he has a cause of action under the Tucker Act, as section 204(a) is money-mandating. *See, e.g., Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997) ("[i]t is well established that 37 U.S.C. § 204 ... serves as the money mandating statute applicable to military personnel claiming

damages"); *Sanders v. United States*, 219 Ct.Cl. 285, 296–97, 594 F.2d 804 (1979) (37 U.S.C. § 204 "confers on an officer the right to pay of the rank he was appointed up and until he is properly separated from the service").

The second basic category of pay entitlement covers those members of the armed forces who do not serve on full-time active duty status. These members of the armed forces, generally members of the Reserve or the National Guard, are only "entitled to compensation for ... each regular period of instruction, or period of appropriate duty, at which the member is engaged in for at least two hours." 37 U.S.C. 206(a) (2000). The only exception to this rule is for service members who were scheduled to perform duty but were unable to because of a physical disability resulting from an injury, illness, or disease that was incurred or aggravated in the line of duty. *See* 37 U.S.C. 206(a)(3); *Dehne*, 970 F.2d at 893 ("The statute mandates compensation for constructive performance only for instruction missed due to some physical disabilities."). Thus, barring injury, illness, or disease, a non-active duty service member is entitled to compensation only for duty actually performed.

As a consequence of the different pay entitlements created by section 204(a) and section 206(a), members of the armed forces serving in a non-active duty capacity are unable to state a back pay claim against the United States, under the Tucker Act, for unattended drills or unperformed training duty. *Palmer*, 168 F.3d at 1313–14 (holding "a member who is serving in part-time reserve duty ... has no lawful pay claim against the United States for unattended drills or for unperformed training duty"); *Dehne*, 970 F.2d at 892 (concluding that "section 206(a) mandates pay for regular periods of instruction, periods of appropriate duty, and for performance of other equivalent duties"); *Banks v. Garrett*, 901 F.2d 1084, 1087 (Fed.Cir.1990) (holding that Banks, a member of a voluntary training unit, could not state a claim under either section 204(a) or section 206(a) because he performed no reserve drills for pay). Therefore, in order for a non-active duty service member's back

pay claim to survive a motion to dismiss, the claim must be based on duty actually performed.

### 1. Back pay for duty performed as a First Lieutenant

■ Mister Greene's first back pay claim is for the difference in pay between the lower pay grade of Second Lieutenant and the higher pay grade of First Lieutenant for duty performed between February 24, 1991, the effective date of his promotion, and October 19, 1995, the date he was given the retroactive promotion. Admin. R. Add. 241; Compl. at 19. This claim clearly survives the Government's Motion to Dismiss. Favorably construing Mr. Greene's claim that the "USAR resolved my promotion issue but [has] not paid me the back pay associated with the promotion," Admin. R. Add. 241, Mr. Greene states a claim that is based on duty actually performed and, thus, is maintainable under the Tucker Act and section 206(a). Therefore, the Government's Motion to Dismiss is DENIED as to Mr. Greene's claim for back pay attendant to his retroactive promotion to First Lieutenant.

### 2. Back pay for drills performed from July 1991, to January 1992

■ The second back pay claim of Mr. Greene is for money he asserts the Army collected from him erroneously for failure to attend drills from July 1991, to January 1992. Admin. R. Add. 240, 298. It appears that Mr. Greene was originally paid for the drills, but that the Army collected $908.25 from Mr. Greene in either 1993 or 1994. *See* Admin. R. Add. 306. The collection, according to Mr. Greene, was erroneous because of an incorrect date on his transfer orders. Admin. R. Add. 240, 298. As discussed above, because members of the Reserve are entitled to pay for duty actually performed, Mr. Greene states a claim under the Tucker Act and section 206(a) for which relief may be granted. Thus, the Government's Motion to Dismiss is DENIED as to Mr. Greene's claim that the Army erroneously collected money from him for non-performance of drills.

### 3. Back pay claim for constructive service and ancillary relief

■ Although Mr. Greene's first and second back pay claims survive the Government's Motion to Dismiss for Failure to State a Claim, his third back pay claim, which is in essence for constructive service from September 24, 1996, to the present, does not survive. As Mr. Greene did not perform any duties for which he was not compensated from the date that he was honorably discharged, September 24, 1996, to the present, he cannot state a claim under 37 U.S.C. § 206(a) for which relief may be granted. The Government's motion to dismiss as to Mr. Greene's claim for constructive service is, therefore, GRANTED.

Furthermore, as Mr. Green fails to state a claim for back pay for constructive service from September 24, 1996, to the present, his claims for relief that are an incident of and collateral to this back pay claim must also be dismissed. *Palmer*, 168 F.3d at 1314 ("Before the trial court could grant [the plaintiff] collateral remedies such as correction of records and reinstatement … he must first establish that, under the Tucker Act, he has a money-mandating statute the entitles him to a pay remedy"); *Reeves*, 49 Fed.Cl. at 569–70. This Court is without power under the Tucker Act to give Mr. Greene the equitable relief he has requested, such as reinstatement, promotion, and opportunities to attend various types of training, without such relief being necessary "to provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2) (2000). Although the Court has not dismissed Mr. Greene's money damages claim in its entirety, for the portion that remains— back pay for the difference in pay between Second and First Lieutenant and back pay for money the Army allegedly erroneously collected—the Court would not need to give Mr. Greene the requested equitable remedies to provide an entire remedy or to complete any relief that might be afforded by the judgment of the Court on the merits of these claims.

Moreover, even if this Court were to rule that Mr. Greene's claims were incident of and collateral to any money damages that

may be awarded to him—for instance, as a result of his being paid as a Second Lieutenant instead of as a First Lieutenant—this Court lacks the power to grant the types of relief that Mr. Greene has sought. In order for the Court to grant Mr. Greene's equitable claims, it would have to intrude into the province of the military; however, such an intrusion would raise separation of powers concerns, as the Congress and the Executive are vested with the primary authority and responsibility over military matters. U.S. Const. art. I, § 8; U.S. Const. art. II, § 2; *see also, e.g., Murphy v. United States*, 993 F.2d 871, 873 (Fed.Cir.1993) (finding that intrusion into the military province raises a separation of powers issue as "Congress and the Executive have primary authority and responsibility over matters military"). As the Supreme Court has recognized, "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). The Court does not have the power of a committee of review, nor is it vested with a veto power. *Murphy*, 993 F.2d at 873 (quoting *TVA v. Hill*, 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)).

Consequently, Mr. Greene's equitable claims are "like thousands of other routine personnel decisions which are variously held nonjusticiable or beyond the competence or the jurisdiction of the courts to wrestle with." *Voge v. United States*, 844 F.2d 776 (Fed.Cir. 1988). For instance, the Court could not grant Mr. Greene's various requests for military assignments, without violating the principle that military assignments are "matters wholly internal to the military and inappropriate for judicial review." *King v. United States*, 50 Fed.Cl. 701, 710 (2001); *see also Orloff*, 345 U.S. at 93–94, 73 S.Ct. 534. Similarly, his request for promotions would improperly involve the Court in deciding questions whose answers necessarily require the highly-specialized skills and knowledge of the military. *See Orloff*, 345 U.S. at 93–94, 73 S.Ct. 534; *Porter v. United States*, 163 F.3d 1304, 1316–17 (Fed.Cir.1998); *Brenner v. United States*, 202 Ct.Cl. 678, 693–94, 1973 WL 21354 (1973). With respect to the reinstatement of Mr. Greene's security clearance, equitable relief would be inappropriate as security clearance determinations are committed to agency discretion and are not reviewable. *See Dep't of the Navy v. Egan*, 484 U.S. 518, 529–30, 108 S.Ct. 818, 98 L.Ed.2d 918. Thus, even were the Court to entertain Mr. Greene's equitable requests, it could not grant any of the equitable relief he seeks.

## C. Motion for Judgment on the Administrative Record

Court review of military benefits decisions involving Correction Boards typically are based on an administrative record consisting of the documents and evidence that were before the Correction Board, any transcripts of proceedings, and the documents memorializing the board's determinations. *See Bishop v. United States*, 26 Cl.Ct. 281, 285 (1992).[3] A motion for judgment on the administrative record, pursuant to RCFC 56.1, requires the Court to review an administrative decision to determine whether it is supported by an already-existing administrative record. The Court reviews this record to determine whether the administrative body acted in a manner that was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See Chappell v. Wallace*, 462 U.S.

---

**3.** Our Court's convention of restricting review to the administrative record seems to conflict with the express holding of the Federal Circuit that plaintiffs challenging Correction Board determinations are "entitled" to supplement this record with additional evidence. *See Heisig v. United States*, 719 F.2d 1153, 1157 (Fed.Cir.1983) ("Appellant was entitled to offer de novo evidence in his presentations … to the district court."); *id.* at 1156 (holding that the same precedents should apply to our Court and district courts in this area). This practice also rests, in part, on Supreme Court jurisprudence concerning the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq. See, e.g., Bishop*, 26 Cl.Ct. at 285; *Long v. United States*, 12 Cl.Ct. 174, 177 (1987). This jurisprudence, in turn, appears to rest on a misreading of the legislative history of the APA. *Gulf Group Inc. v. United States*, 61 Fed.Cl. 338, 350 n. 25 (2004). In any event, the substantial evidence standard in military benefits cases is primarily derived from the deference courts afford to military judgment in military matters, *see Heisig*, 719 F.2d at 1156.

296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Roth v. United States,* 378 F.3d 1371, 1381 (Fed.Cir.2004); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986); *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984 (1979); *Sanders v. United States,* 219 Ct.Cl. 285, 298–99, 594 F.2d 804 (1979).

A motion under RCFC 56.1 for judgment upon the administrative record differs from a motion for summary judgment under RCFC 56, as the existence of genuine issues of material fact does not preclude judgment under the former. *Compare* RCFC 56.1(a) (incorporating only the standards of RCFC 56(a)-(b)) *with* RCFC 56(c) (containing the disputed facts standard). A motion for judgment on the administrative record examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, abused its discretion. *See Gulf Group Inc. v. United States,* 61 Fed.Cl. 338, 350 (2004); *Tech Systems, Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001).

In this case, therefore, the Government, in moving for judgment on the administrative record, must show that the decision of the ABCMR—with regard to Mr. Greene's claims that are within this court's jurisdiction and survive the Government's Motion to Dismiss—was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulation. *See, e.g., Wronke v. Marsh,* 787 F.2d at 1576; *Koster v. United States,* 231 Ct.Cl. 301, 685 F.2d 407, 411 (1982). Mister Greene has two claims that are within this Court's subject matter jurisdiction and survive the Government's Motion to Dismiss: his claim for back pay attendant to his retroactive promotion to First Lieutenant; and his claim for back pay that he alleges the Government erroneously collected from him.

### 1. Back pay attendant to promotion to First Lieutenant

■ The ABCMR's decision makes no reference to Mr. Greene's claim that he was never compensated as a First Lieutenant for service he performed between February 24, 1991, and October 19, 1995, when he was retroactively promoted. In a 1996 complaint before the U.S. District Court for the District of Connecticut, No. 96–1129, which was incorporated by reference in his application for correction before the ABCMR, Mr. Greene asserted, *inter alia,* that the Army Reserve resolved his promotion issue but did not give him the back pay attendant to that promotion. Admin. R. Add. 241. Thus, while it is clear that Mr. Greene stated his claim for back pay to the ABCMR, it is not clear why the ABCMR either denied Mr. Greene's claim *sub silentio* or never addressed it. Members of the Reserve are entitled to pay for services actually performed, *see, e.g., Reeves v. United States,* 49 Fed.Cl. 560, 566 (2001), and Mr. Greene performed services between the effective date of promotion, February 24, 1991, and the date on which he was informed of the retroactive promotion, October 19, 1995.

Because the decision of the ABCMR provides no explanation as to why Mr. Greene's claim was denied, or even any indication that it was considered,[4] and the Administrative Record does not contain adequate pay records for the Court to determine whether Mr. Greene was ever given the back pay to which he is entitled, the Government's motion for judgment upon the administrative record as to this claim is DENIED. Simply put, given the Administrative Record before the Court, the Court cannot make a determination as to whether the ABCMR's decision was an abuse of discretion. Moreover, even if the Court were to find that the denial of Mr. Greene's back pay claim was in error, the Administrative Record does not indicate how much back pay Mr. Greene would be due. Although the Court is aware that Supreme Court has advised that "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigative explanation," *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105

---

4. The only reference to Mr. Greene's promotion in ABCMR's decision is in the "Evidence of Record" section, which notes that on August 16, 1995 the flag on Mr. Greene's record was removed per the USARC Inspector General and that Mr. Greene was informed on October 19, 1995 that he had been promoted to the rank of First Lieutenant. Admin. R. 302.

S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Court will delay the issuing of a remand order pending a status conference with Mr. Greene and counsel for the Government.

### 2. Pay the USAR collected

As with Mr. Greene's claim for back pay attendant to his retroactive promotion to First Lieutenant, the ABCMR's decision makes no reference to Mr. Greene's claim that the Army Reserve erroneously collected money from him for duty he actually performed. Admin. R. 296–304. Again, the ABCMR either denied Mr. Greene's claim *sub silentio* or never addressed it. Mr. Greene asserts that the "USAR collected money for drills performed from July 1991 to January 1992 due to fraudulent dates placed on a transfer document. The USAR failed to pay the drills after submission of corrected documents verifying the drill performance." Admin. R. Add. 240. The Administrative Record contains two documents pertaining to the pay collection: 1) A pay inquiry filed by Mr. Greene on January 17, 1996, and related attachments, in which Mr. Greene requested $908.25 plus applicable interest that was collected from him in 1994 for non-performance of drills during 1991; and 2) a collection letter and related documents from the Defense Finance and Accounting Office requesting repayment of $908.25 that Mr. Greene had been overpaid. Admin. R. Add. 298–305; *id.* at 306–08.

Because the ABCMR does not discuss Mr. Greene's claim for this money collected from him and there is little documentation related to the claim in the Administrative Record, the Court cannot, at this time, determine whether the ABCMR abused its discretion in denying Mr. Greene's claim. The Govern-

ment's motion for judgment upon the administrative record as to this claim is, therefore, DENIED. The Court will discuss further proceedings on this matter in a status conference with Mr. Greene and counsel for the Government.

### 3. Student Loan Repayment

■ Finally, in Mr. Greene's 1996 district court complaint, which as noted above was incorporated by reference in his application to the ABCMR, Mr. Greene claimed that the Army Reserve failed to "fulfill its obligation to repay my student loans in accordance with my initial enlistment contract," presumably under the Student Loan Repayment Program ("SLRP") or its equivalent. Admin. R. Add. at 241. Even assuming that Mr. Greene's student loan repayment claim is within this Court's jurisdiction—that the claim arose within the statute of limitations and that the particular student loan program under which Mr. Greene claims he is entitled to repayment is money-mandating[5]—review of the record demonstrates that the decision of the ABCMR to deny Mr. Greene's claim was not arbitrary, capricious, or contrary to law, and was supported by substantial evidence. Unlike Mr. Greene's claim for retroactive back pay and his claim that money was erroneously collected from him,[6] there is not enough evidence in the record to support Mr. Greene's claim as to student loan repayment, and thus overturn the ABCMR's decision to deny his repayment claim. Mr. Greene had the burden of submitting to the corrections board sufficient evidence to support his entitlement to student loan repayment. *See* 32 C.F.R. § 581.3 (2004).[7]

The Administrative Record, however, contains little evidence bearing on Mr. Greene's

---

5. The Government's motion to dismiss does not address this Court's jurisdiction over Mr. Greene's student loan repayment claim.

6. The Administrative Record clearly demonstrates that Mr. Greene was retroactively promoted to the rank of First Lieutenant and, therefore, is entitled to back pay. Additionally, the record clearly demonstrates that money was collected from Mr. Greene. Conversely, the record provides little evidence with regard to student loan repayment.

7. The Army corrections board regulations direct that a record may only be corrected if "sufficient evidence exists on the record" to demonstrate an "error or injustice." 32 C.F.R. § 581.3(b)(4)(ii). Further, the regulations state that "[t]he ABCMR will decide cases on the evidence of record. It is not an investigative body." *Id.* at § 581.3(c)(2)(iii). Thus, to the extent that the Administrative Record does not contain sufficient evidence to demonstrate an error or injustice, Mr. Greene had the burden of submitting relevant evidence to the ABCMR to support his claim for student loan repayment.

claim. There is a memorandum from Mr. Greene's unit, "C" Company, dated November 3, 1993, in which the unit administrator informs Mr. Greene that he has "filled out incorrectly" the six SLRP Annual Repayment Applications he submitted. Admin. R. 104. There is also a memorandum from Mr. Greene to the Army regarding "student loan repayment problems," dated September 15, 1993, in which he claims that he is owed student loan repayment for the "Spring 1988 semester at the University of Connecticut" and that the "1989–1990 Loan holder sent SLRP paperwork to 126th M.I. Bn.... [, that Mr. Greene] called 94th AROCM educational assistance office ... [and the] paperwork was never forwarded." Admin. R. 284. The Administrative Record also contains a credit report that lists a student loan. Admin. R. Add. 255. Finally, Mr. Greene's initial enlistment contract notes that he was entitled to the "student loan repayment program." Admin. R. 30.

Given the fact that Mr. Greene was aware that he could submit evidence to both the ABCMR and this Court,[8] and the fact that the ABCMR "is not an investigative body," 32 C.F.R. § 581.3(c)(2)(iii), the ABCMR's decision to deny Mr. Greene's student loan repayment claim was reasonable. There is insufficient evidence in the record demonstrating that Mr. Greene is entitled to student loan repayment or, quite frankly, indicating the exact nature of Mr. Greene's student loan repayment claim. Therefore, the Government's motion for judgment upon the administrative record is GRANTED as to Mr. Greene's student loan repayment claim.

### III. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss for Failure to State a Claim is **GRANTED–IN–PART** and **DE-NIED–IN–PART**. All back pay related claims in Mr. Greene's Complaint, except as to back pay attendant to Mr. Greene's retroactive promotion to the rank of First Lieutenant and for drills performed between July

1991 and January 1992, are hereby dismissed for failure to state a claim upon which relief may be granted. Mister Greene's claim for punitive damages is **DISMISSED** sua sponte for want of subject matter jurisdiction. The Government's Motion for Judgment on the Administrative Record with regard to Mr. Greene's claim for student loan repayment is **GRANTED**; and with regard to his claims for back pay attendant to his retroactive promotion to the rank of First Lieutenant, and for back pay for drills performed between July 1991 and January 1992, is **DENIED**.

**IT IS SO ORDERED.**

---

8. Mr. Greene attached numerous exhibits to both his application for correction of military record and to his complaint in this Court.